**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 14, 2024

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 14, 2024

*E. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF WASHINGTON, a Washington Nonprofit Corporation; ASSOCIATED BUILDERS AND CONTRACTORS OF WESTERN WASHINGTON, INC., a Washington Nonprofit Corporation; INLAND PACIFIC CHAPTERS OF ASSOCIATE BUILDERS AND CONTRACTORS, INC., a Washington Nonprofit Corporation; and INLAND NORTHWEST AGC, a Washington Nonprofit Corporation, <br><br>     Respondents, <br><br>     v. <br><br> STATE OF WASHINGTON; JAY INSLEE, Governor; JOEL SACKS, Director of Washington State Department of Labor and Industries; and JIM CHRISTENSEN, Washington State Department of Labor and Industries Program Manager and Industrial Statistician, Prevailing Wage Program; in their official capacities, <br><br>     Petitioners. | No. 101997-1 <br><br> EN BANC <br><br> Filed: March 14, 2024 |

GORDON McCLOUD, J.— When the State of Washington builds a bridge, a road, or any other public project, it must pay the workers a fair wage—what the legislature has called the "prevailing rate of wage." RCW 39.12.020. Before 2018,

the legislature directed the State to determine the prevailing rate of wage by using wage and hour surveys dependent on voluntary compliance by employers and unions. WAC 296-127-019; Clerk's Papers (CP) at 2559. The "data collected" from those surveys could be used "only in the county for which the work was performed." RCW 39.12.026(1).

In 2018, the legislature changed the method for determining the prevailing rate of wage on most projects. It directed the State to determine that rate "by adopting the hourly wage, usual benefits, and overtime paid for the geographic jurisdiction established in collective bargaining agreements [CBAs] for those trades and occupations that have [CBAs]." RCW 39.12.015(3)(a).

In *Associated General Contractors*, the Court of Appeals declared this 2018 statute unconstitutional on the ground that it conflicted with the single-county geographic limitation in the older statutory subsection, RCW 39.12.026(1).[1] Specifically, the Court of Appeals held that RCW 39.12.026(1) provides that "data collected" by the State to determine prevailing wage rates may be used "only in the county for which the work was performed," the new CBA-adoption statute lacks that geographic limitation, and the RCW 39.12.026(1) single-county limit conflicts

---

[1] *Associated Gen. Contractors of Wash. v. State*, No. 54465-2-II (Wash. Ct. App. Apr. 18, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054465-2-II%20Unpublished%20Opinion.pdf (*AGC* III).

with RCW 39.12.015(3)(a)'s seeming permission to adopt wage rates from CBAs that cover more than one county. The Court of Appeals concluded that this was a fatal conflict—that it violated article II, section 37 of the Washington Constitution.

We disagree. The older statutory subsection, RCW 39.12.026(1), was enacted at the time that the older wage-survey method was in force and, when RCW 39.12.026(1) is read in context of the full statute and chapter in which it appears, that statutory subsection's single-county use limitation applies only to the wage-survey "data collection" method. It does not apply to the newer CBA-adoption method at all. Thus, the older statute does not conflict with the newer statute; they just apply to different situations.

We therefore reverse the decision of the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

I. The legislature amends the prevailing wages on public works act

The prevailing wages on public works act (Act) requires employers to pay no less than the "prevailing rate of wage" to laborers, workers, or mechanics working on public projects. RCW 39.12.020. The legislature originally defined the "prevailing rate of wage" as "the rate of hourly wage, usual benefits, and overtime paid in the locality . . . to the majority of workers, laborers, or mechanics, in the same trade or occupation." RCW 39.12.010(1). The "'locality' is the largest city in the county wherein the physical work is being performed." RCW 39.12.010(2).

3

The legislature placed the job of determining the prevailing wage for each trade and occupation in the hands of the industrial statistician of the Department of Labor and Industries (L&I). RCW 39.12.015(1).

Pursuant to that legislative grant of authority, the industrial statistician promulgated WAC 296-127-019, which lays out a multistep procedure for setting the prevailing wage by using wage surveys. Before 2018, the industrial statistician followed this method and set prevailing wage rates in Washington's 39 counties by sending wage surveys to employers and unions, asking them to voluntarily report wage rates in various trades and occupations. WAC 296-127-019; CP at 2559. Then, the industrial statistician would "systemize" the survey data and "determine the majority or average rate by statistical estimation." *Associated Gen. Contractors of Wash. v. State*, 200 Wn.2d 396, 401, 518 P.3d 639 (2022) (*AGC* II) (citing WAC 296-127-019); CP at 2555-59 (Christensen deposition).

In 2003, the legislature codified the wage survey process in RCW 39.12.026 and directed the statistician that "all data collected by [L&I] may be used only in the county for which the work was performed." Former RCW 39.12.026(1) (2003).

In 2018, the legislature modified the prevailing wage process by enacting Substitute Senate Bill (SSB) 5493.[2]  That law requires the industrial statistician to

---

[2] SSB 5493, 65th Leg., Reg. Sess. (Wash. 2018).

"adopt[]" the wages memorialized in CBAs to set most prevailing wage rates, rather than to collect, analyze, and apply data concerning wages, jobs, and hours through the wage-survey method. This newer law, codified at RCW 39.12.015, currently provides:

> (3)(a) Except as provided in RCW 39.12.017,[3] and notwithstanding RCW 39.12.010(1), the industrial statistician shall establish the prevailing rate of wage by adopting the hourly wage, usual benefits, and overtime paid for the geographic jurisdiction established in [CBAs] for those trades and occupations that have [CBAs]. For trades and occupations with more than one [CBA] in the county, the higher rate will prevail.
>
> (b) For trades and occupations in which there are no [CBAs] in the county, the industrial statistician shall establish the prevailing rate of wage as defined in RCW 39.12.010 by conducting wage and hour surveys. In instances when there are no applicable [CBAs] and conducting wage and hour surveys is not feasible, the industrial statistician may employ other appropriate methods to establish the prevailing rate of wage.

II.     AGC challenges SSB 5493

In 2019, Associated General Contractors of Washington, Associated Builders of Western Washington Inc., Inland Pacific Chapter of Associated Builders and Contractors Inc., and Inland Northwest AGC Inc. (collectively AGC)

---

[3] In 2019, the legislature amended RCW 39.12.015 to incorporate by reference the newly enacted RCW 39.12.017, which directs the industrial statistician to return to using wage surveys to determine prevailing wage rates for the residential construction occupation, regardless of whether there is an applicable CBA. LAWS OF 2019, ch. 29, § 2. RCW 39.12.017 is not at issue here.

filed this lawsuit challenging SSB 5493. AGC argued that SSB 5493 (1) unconstitutionally delegates legislative authority, (2) violates due process, (3) violates equal protection, and (4) violates article II, section 37 of the Washington Constitution. CP at 11-17. It sought declaratory judgment that the law is invalid as well as preliminary and permanent injunctions barring implementation of the law. *Id.* at 17.

The trial court denied AGC's motion for a preliminary injunction. *Id.* at 182. The parties filed cross motions for summary judgment, which the trial court resolved in favor of the State. *Id.* at 2536.

AGC appealed. The Court of Appeals reversed, accepting AGC's argument that SSB 5493 violates the nondelegation doctrine. *Associated Gen. Contractors of Wash. v. State*, 19 Wn. App. 2d 99, 112, 494 P.3d 443 (2021) (*AGC* I). The court did not reach the article II, section 37 issue. *Id.* at 101 n.4. The court declined to consider the due process and equal protection issues because they were insufficiently briefed. *Id.* at n.3.

This court granted review and reversed, holding that the new law did not violate the nondelegation doctrine. *AGC* II, 200 Wn.2d at 400. We remanded for the Court of Appeals to consider the remaining article II, section 37 issue. *Id.* at 415-16.

On remand, the Court of Appeals held that the new law violates article II, section 37. *AGC* III, slip op. at 2. It reversed the trial court's grant of summary judgment in favor of the State and remanded to the trial court for further proceedings. *Id.*

The State filed a petition for review, which we granted. 1 Wn.3d 1024 (2023).

## STANDARD OF REVIEW

We review an order on summary judgment de novo, performing the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002) (citing *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 752, 466 P.3d 213 (2020) (citing CR 56(c)). We "review constitutional questions and statutory interpretation de novo." *Black v. Cent. Puget Sound Reg'l Transit Auth.*, 195 Wn.2d 198, 204, 457 P.3d 453 (2020) (citing *Pierce County v. State*, 150 Wn.2d 422, 429, 78 P.3d 640 (2003)).

## ANALYSIS

This case asks us to decide whether RCW 39.12.015(3)—the newer law that requires the State to use CBAs to set prevailing wage rates—violates article II,

7

section 37 of the Washington Constitution. That section of the constitution provides, "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

An act complies with article II, section 37 if "it (1) is a 'complete act' and (2) does not 'render[] erroneous' 'a straightforward determination of the scope of rights or duties under the existing statutes.'" *Wash. State Legislature v. Inslee*, 198 Wn.2d 561, 592, 498 P.3d 496 (2021) (alteration in original) (quoting *Wash. Educ. Ass'n v. State*, 93 Wn.2d 37, 40-41, 604 P.2d 950 (1980)). We use this two-part test to evaluate an article II, section 37 challenge because ""'[n]early every legislative act of a general nature changes or modifies some existing statute, either directly or by implication," [but] that does not necessarily mean that the legislation is unconstitutional.'" *Wash. State Ass'n of Counties v. State*, 199 Wn.2d 1, 14, 502 P.3d 825 (2022) (quoting *El Centro de la Raza v. State*, 192 Wn.2d 103, 128, 428 P.3d 1143 (2018) (plurality opinion) (first alteration in original) (quoting *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 640, 71 P.3d 644 (2003))).

The Court of Appeals held that RCW 39.12.015(3) complies with the first part of that two-part test: it ruled that RCW 39.12.015(3) constitutes a "complete act." *AGC* III, slip op. at 11 (citing *Citizens*, 149 Wn.2d at 642). The parties agree with that portion of the appellate court's decision.

But the Court of Appeals then held that RCW 39.12.015(3) failed the second part of that two-part test: it ruled that RCW 39.12.015(3) renders erroneous a straightforward reading of RCW 39.12.026. *Id.* at 16. The court opined that "if a multicounty CBA wage is used to set the prevailing wage in multiple counties, at least one county's prevailing wage could be established by data from another county." *Id.* at 14. Because of that, the Court of Appeals concluded that "[i]t becomes impossible for the industrial statistician to comply with both statutes if a multicounty CBA is involved." *Id.* at 16. Thus, that court held that RCW 39.12.015(3) violates article II, section 37 by creating a conflict with RCW 39.12.026(1). *Id.*

We disagree. Reading RCW 39.12.026(1) in the context of the full statute and chapter in which it appears—which is what our precedent compels us to do— its single-county limitation applies only to the wage survey "data collection" method of determining prevailing wage rates. It does not apply to the newer CBA-adoption method of determining prevailing wage rates at all. The new RCW 39.12.015(3) thus does not conflict with, repeal, or even change, the older RCW 39.12.026. It necessarily follows that RCW 39.12.015(3) does not violate article II, section 37.

RCW 39.12.026(1)'s text, context, and amendments show that its term "all data collected" refers to data "collected" through wage surveys, not wage rates "adopt[ed]" from CBAs

Our objective in statutory interpretation is to determine the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We determine legislative intent from "plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing *Campbell & Gwinn*, 146 Wn.2d at 9-10).

A. RCW 39.12.026(1)'s plain language in the context of that full statute

To determine the meaning of a statute, we start with its plain language. Our precedent is clear that when we look at this plain language, we must read all words "in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary." *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008); *Green v. Pierce County*, 197 Wn.2d 841, 853, 487 P.3d 499 (2021) ("This court does not examine a specific word in a vacuum; rather, we must consider the context of the surrounding text to determine the legislature's intent." (citing *Campbell & Gwinn*, 146 Wn.2d at 11-12)). Thus, when interpreting statutory terms, a court should "'take into consideration the meaning naturally

attaching to them from the context, and . . . adopt the sense of the words which best harmonizes with the context.'" *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (alteration in original) (internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)). When properly considered in context, the phrase "all data collected" in RCW 39.12.026 is limited to data collected through wage surveys.

We start with the plain language of the main statutory subsection at issue here, RCW 39.12.026(1), particularly its phrase, "all data collected … may be used only in the county for which the work was performed." That phrase and subsection is part of RCW 39.12.026; that statute provides in full:

> (1)     In establishing the prevailing rate of wage under RCW 39.12.010, 39.12.015, and 39.12.020, *all data collected* by [L&I] *may be used only in the county for which the work was performed.*
>
> (2)[L&I] must provide registered contractors with the option of completing a wage survey electronically.

 (Emphasis added.)

RCW 39.12.026's subsection (1) certainly places a single-county limitation on the use of "all data collected." But RCW 39.12.026's subsection (2) continues that L&I "must provide registered contractors with the option of completing a *wage survey* electronically." (Emphasis added.) Read together, these two subsections of the same statute on the same topic naturally suggest that the "data

11

collect[ion]" that forms the subject of subsection (1) must be the "wage survey" method of data collection that forms the subject of subsection (2). Thus, applying the interpretive rule that we read the disputed statutory subsection in the context of the statute as a whole, "all data collected" seems to be limited to data collected from wage surveys.

B. RCW 39.12.026's plain language in the context of its history of amendments

The amendments to RCW 39.12.026 support that conclusion. "Plain language analysis also looks to amendments to the statute's language over time." *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 440, 395 P.3d 1031 (2017) (citing *Campbell & Gwinn*, 146 Wn.2d at 10-11). The amendments to RCW 39.12.026 show that the statute was enacted to codify the industrial statistician's use of wage surveys in setting the prevailing wage and that its reference to "data" has always been limited to information collected via those wage surveys.

To understand the amendments to RCW 39.12.026, we start with the framework established by that statute's full chapter, ch. 39.12 RCW.

When the legislature first enacted former RCW 39.12.015 (1965), that portion of chapter 39.12 RCW provided only that "[a]ll determinations of the prevailing rate of wage shall be made by the industrial statistician of [L&I]." At

that time, the legislature did not tell the statistician exactly how to make that determination. Pursuant to the authority granted by RCW 39.12.015, the industrial statistician developed the wage survey method as a means of gathering the information needed to set the prevailing wage and promulgated regulations governing the process. *See* ch. 296-127 WAC.

One such regulation, WAC 296-127-019(1)(a), specifies that "the industrial statistician shall establish prevailing wage rates by" "[c]onducting wage and hour surveys for established trades and occupations." This regulation acknowledges that CBA wages may be reported as one part of the wage survey process, where applicable, by labor unions or employers. *See* WAC 296-127-019(3)(a)(ii) (wage survey forms will be mailed to "[l]abor unions representing workers in the trades or occupations being surveyed"); WAC 296-127-019(4)(c) ("Data reported on survey forms may be verified by the department, and will be used only when submitted on behalf of or by . . . [l]abor unions submitting wage and hour data on behalf of contractors and/or employers who are signatory to those unions' [CBAs] covering the trade or occupation being surveyed."); CP at 2563 (Christensen deposition) (affirming that industrial statistician could consider "a collective bargaining agreement to help make [the] determination" of prevailing wage when wage surveys were used).

But it gives CBAs no special status. Instead, that regulation provides a formula for calculating all "data reported on wage surveys"—whether a CBA served as a data point on such a survey or not—to determine the prevailing wage. WAC 296-127-019(6). Where "the most recently established prevailing wage rates were derived from a [CBA]," the industrial statistician could "[a]dopt[] the wage and benefit adjustments" from those CBAs when updating prevailing wages. WAC 296-127-019(1)(b).[4] Where wage surveys were not feasible, the industrial statistician could use "other methods deemed appropriate" to set the prevailing wage. WAC 296-127-019(1)(c).

That was the way surveys were conducted in 2003, when the legislature enacted RCW 39.12.026. This statute codified the industrial statistician's use of wage surveys (of which CBA rates might be one data point) to determine the

---

[4] The CBA adjustment-adoption procedure contemplated by the regulation is not the same as the current directive in RCW 39.12.015(3)(a) to adopt CBA wage rates as the prevailing wage. Rather, under the wage survey method, the prevailing wage might be derived from a CBA, if that CBA wage represented "the majority of hours reported" for that trade or occupation in the largest city in the county. WAC 296-127-019(6)(a). When the prevailing wage was derived in such a manner, the industrial statistician could then "adopt[]" the wage and benefits from that CBA when updating prevailing wages. WAC 296-127-019(1)(b). The distinction is that under the wage survey method, the prevailing wage must be initially derived following the calculation method provided in WAC 296-127-019(6), while under the new law, the industrial statistician simply adopts the highest CBA wage rate without being required to determine whether that rate represents the "majority of hours worked" in the locality. RCW 39.12.015(3)(a).

14

prevailing wage. LAWS OF 2003, ch. 363, § 201. When first enacted, former RCW 39.12.026 provided:

> (1)  In establishing the prevailing rate of wage under RCW 39.12.010, 39.12.015, and 39.12.020, *all data collected* by [L&I] may be used only in the county for which the work was performed.
>
> (2) This section applies only to *prevailing wage surveys* initiated on or after August 1, 2003.

(Emphasis added.)

Thus, at the time of enactment, "all data collected" in RCW 39.12.026(1) could only have meant data collected from wage surveys—both because RCW 39.12.026(2) says so and because in 2003, CBA-adoption was not the basis for establishing the initial prevailing wage rate—only wage-survey "data collection" was.

In 2015, the legislature amended RCW 39.12.026. It removed the expired 2003 effective date provision in subsection (2) and replaced it with "[L&I] must provide registered contractors with the option of completing a *wage survey* electronically." RCW 39.12.026(2) (emphasis added). This change did not alter the fact that the whole provision was still limited to the wage survey data-collection context governed by WAC 296-127-019 because that was still the only method the industrial statistician used to set prevailing wages in 2015. WAC 296-127-019; CP at 2559.

In 2018, the legislature enacted RCW 39.12.015(3)—the newer section that requires the industrial statistician to adopt CBA rates to determine the prevailing wage for most trades and occupations—and it included a specific geographic limitation applicable to CBA-adoption. The legislature did not amend RCW 39.12.026, or its reference to the wage survey data-gathering method, or its different geographic limitation.

In the context of this amendatory history and the statutory scheme as a whole, the phrase "all data collected" in RCW 39.12.026(1) must be interpreted as remaining limited to data from wage surveys. It does not include wage rates "adopt[ed]" from CBAs under RCW 39.12.015(3). *See also* RCW 1.12.020 ("The provisions of a statute, so far as they are substantially the same as those of a statute existing at the time of their enactment, must be construed as continuations thereof.").[5]  Thus, applying the interpretive rule that we read the disputed statutory subsection in the context of its amendatory history, "all data collected" once again seems to be limited to data collected from wage surveys.

---

[5] At oral argument, AGC asserted that RCW 39.12.026(1) at one time contained an explicit reference to wage surveys, but that the legislature removed that language in 2015. Wash. Supreme Court oral arg., *Associated Gen. Contractors of Wash. v. State* (Jan. 25, 2024), at 20 min., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2024011492/?eventID=2024011492. Our research shows this assertion is incorrect. As discussed above, RCW 39.12.026(1) has never contained an explicit reference to wage surveys.

16

C. RCW 39.12.026's plain language in the context of the full chapter in which it appears

As discussed above, another rule about reading a disputed statutory subsection in context directs us to read it in context of the full chapter in which it appears.  As the State argues, the legislature used different verbs in RCW 39.12.015(3) and RCW 39.12.026(1), and that "shows a difference in legislative intent." State's Suppl. Br. at 10 (citing *Guillen v. Contreras*, 169 Wn.2d 769, 776, 238 P.3d 1168 (2010) (quoting *Jackson*, 137 Wn.2d at 724)).

Specifically, in RCW 39.12.015(3)(a), the legislature directed the industrial statistician to "adopt[]" the highest CBA wage as the prevailing wage. To adopt means "to accept and establish (something, such as a law or policy) in a formal or official way." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/adopt (last visited Mar. 5, 2024). Thus, adopting the highest CBA wage means accepting and establishing that wage as the prevailing wage without further calculation.

By contrast, in RCW 39.12.015(3)(b), the legislature directed the statistician to "conduct[] wage and hour surveys" where there is no applicable CBA. A regulation, WAC 296-127-019, tells the statistician how to conduct those surveys. As discussed above, the process involves sending surveys to employers and labor unions to "'gather . . . market data regarding the wages paid to workers in various

17

classifications and the hours of their labor.'" *AGC* II, 200 Wn.2d at 401 (alteration in original) (quoting the record); WAC 296-127-019(3)(a). The industrial statistician then "systemize[s] the data from wage survey responses and CBAs" and "determine[s] the majority or average rate by statistical estimation"—a multistep process distinct from merely identifying and "adopting" the highest CBA wage. *AGC* II, 200 Wn.2d at 401; CP at 2555 (Christensen deposition) (explaining what systemizing data means), 2564 (stating that determining prevailing wage under the wage survey process is distinct from "just adopt[ing]" a CBA wage rate).

Thus, the interpretive principles that we read statutory subsections in the context of the full statute and chapter in which they appear and that the legislature's use of different words suggests that it intends to convey different meanings also weighs in favor of finding the newer statute constitutional.

> D. AGC contends that the State previously conceded that the phrase "all data collected" includes data from CBAs; we disagree with that characterization of the record

AGC argues that the State has previously conceded that information from CBAs is a form of data, Suppl. Br. of Resp'ts at 15 (citing CP at 117, 1811), so RCW 39.12.026(1)'s mandate that "data collect[ed]" be used only in the county "for which the work was performed" applies to the CBA-adoption method, also.

AGC also asserted at oral argument that this purported concession formed the basis for the State's winning argument in *AGC* II.[6]

We disagree with AGC's characterization of the record. As stated above, the issue in *AGC* II was whether SSB 5493 violated the nondelegation doctrine. The portions of the record cited by AGC are State briefs addressing the delegation issue, not discussing the meaning of "data collected" in .026(1). In the superior court, AGC argued that SSB 5493 violated the doctrine because it "'includes no safeguards to ensure a CBA used to establish a prevailing wage rate is truly negotiated at arm's length.'" CP at 1811 (quoting AGC's superior court brief at 14)). It also asserted that "there is not an unbiased review by a public official of the agreements because allegedly the industrial statistician has no discretion to set prevailing wages." *Id.* (citing AGC's superior court brief at 16). In response, the State argued that there were sufficient safeguards and oversight because under the statute, the industrial statistician "reviews CBAs" to determine whether they are bona fide and that he or she "analyzes data, either cleaning up data from the wage survey or determining whether the CBA reflects collective bargaining." *Id.* (citing Christensen deposition).

---

[6] Wash. Supreme Court oral arg., *supra*, at 21 min., 12 sec.; 29 min., 58 sec.

As noted, this court concluded in *AGC* II that SSB 5493 did not violate the nondelegation doctrine. First, we held that the statute did not improperly delegate power to a private party (as opposed to a government agency) because the statute "did not confer on the parties to the CBAs the power to set the prevailing wage rate. Instead, the statute specifically delegates that authority to the industrial statistician." *AGC* II, 200 Wn.2d at 409. We said that "[t]he ability to determine the prevailing wage inherently grants some discretion to the industrial statistician to determine whether a CBA is valid and which CBA applies," but that RCW 39.12.015(3) still sets adequate standards because it tells the statistician exactly how to determine the prevailing wage. *Id.* at 412. And we also made clear that for purposes of the nondelegation doctrine, the legislature is free to confer *no* discretion on an agency as long as the law provides clear direction and sufficient procedural protections. *Id.* at 409.

We do not read the State's response to AGC's previous delegation doctrine arguments as conceding that "all data collected" in RCW 39.12.026(1) includes wage information "adopt[ed]" from CBAs pursuant to RCW 39.12.015(3).

E. The statutes can be harmonized

Finally, we must interpret the two statutes that AGC claims conflict in light of the rule that when we interpret statutory language, "'[e]very provision must be viewed in relation to other provisions and harmonized if at all possible.'" *In re Est.*

*of Kerr*, 134 Wn.2d 328, 335, 949 P.2d 810 (1998) (quoting *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 425, 799 P.2d 235 (1990)). The "'goal is to avoid interpreting statutes to create conflicts between different provisions so that we achieve a harmonious statutory scheme'" because we presume that the legislature "does not intend to create inconsistent statutes." *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 585, 588, 192 P.3d 306 (2008) (quoting *Echo Bay Cmty. Ass'n v. Dep't of Nat. Res.*, 139 Wn. App. 321, 327, 160 P.3d 1083 (2007)); *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001) (where statutes relate to the same subject matter, they "'are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes'" (quoting *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974))).

As explained above, the newer RCW 39.12.015(3)(a) does not conflict with the older RCW 39.12.026(1) because the older statute was always limited to data collected from wage surveys. Even if there were any question about that conclusion, we would have to consider whether the two statutes could be interpreted to harmonize with each other. The answer is yes: RCW 39.12.015(3)(a) directs the statistician to "adopt[]" the highest CBA rate in a geographical jurisdiction as the prevailing wage for a trade; if there is no applicable CBA, RCW 39.12.015(3)(b) directs the statistician to establish the

21

prevailing wage "by conducting wage and hour surveys"; RCW 39.12.026(1)

limits the use of "data collected" from those wage surveys to the county "for which

the work was performed"; the statutes operate harmoniously if RCW 39.12.026 as

a whole can be interpreted as limited to the "data collect[ion]" for wage survey

context. As discussed above, it can.

AGC appears to argue that we only use the interpretive rule of attempting to

harmonize statutes if the statutory language is ambiguous. Suppl. Br. of Resp'ts at

16-17. AGC provides no citation for that proposition. We find none, either.

Instead, our cases hold that the directive to harmonize statutes is part of

determining the plain meaning of the statute—in other words, we attempt to

harmonize statutes even if they are not completely ambiguous. *See, e.g.*, *Kerr*, 134

Wn.2d at 335; *Am. Legion Post No. 149*, 164 Wn.2d at 585.[7]

Reading the statutes in harmony also comports with the purpose of the Act,

which we have explained in prior opinions. The Act "is remedial and should be

construed liberally," i.e., in favor of workers. *Everett Concrete Prods., Inc. v.*

---

[7] The State also argues that we should apply the general-specific rule. Under that rule, where two statutes conflict, the more specific statute "'will be considered as an exception to, or qualification of, the general statute.'" *Wash. State Ass'n of Counties*, 199 Wn.2d at 13 (quoting *Wark v. Wash. Nat'l Guard*, 87 Wn.2d 864, 867, 557 P.2d 844 (1976)). We do not reach this argument because no conflict exists and the statutes can be harmonized. *Univ. of Wash. v. City of Seattle*, 188 Wn.2d 823, 833, 399 P.3d 519 (2017).

*Dep't of Lab. & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988) (citing *Se. Wash. Bldg. & Constr. Trades Council v. Dep't of Lab. & Indus.*, 91 Wn.2d 41, 44, 586 P.2d 486 (1978)). It "was designed to protect employees on public works projects" by "prevent[ing]" a "decrease in local wages." *Silverstreak, Inc. v. Dep't of Lab. & Indus.*, 159 Wn.2d 868, 880, 883, 154 P.3d 891 (2007) (plurality opinion); *Heller v. McClure & Sons, Inc.*, 92 Wn. App. 333, 340, 963 P.2d 923 (1998). "Thus, 'it is the worker, not the contractor, who is the intended beneficiary of the' act." *Silverstreak*, 159 Wn.2d at 880 (quoting *Heller*, 92 Wn. App. at 338); *AGC* II, 200 Wn.2d at 400. Adopting the narrower reading of "data" comports with the legislature's intent to protect workers and to prevent the erosion of wages.[8] *See Citizens All. for Prop. Rts. Legal Fund v. San Juan County*, 184 Wn.2d 428, 437, 359 P.3d 753 (2015) ("'Ultimately, in resolving a question of statutory construction, this court will adopt the interpretation which best advances the legislative purpose.'" (quoting *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990))).

---

[8] AGC notes that theoretically, a CBA could exist that provides wages lower than the wages paid to the majority of nonunion workers in a county. Answer to Pet. for Discr. Rev. at 28 (citing CP at 388, 1754, 2574). In such a case, adopting the highest CBA wage would depress public works wages. To be sure, this is a theoretical possibility, as the State has acknowledged. But AGC has not identified a case where this has actually occurred.

F. Conclusion as to statutory interpretation

All of these rules of statutory interpretation militate in favor of the position advanced by the State. Limiting "all data collected" to data collected from wage and hour surveys is "the sense of the words which best harmonizes with the context." *Roggenkamp*, 153 Wn.2d at 623 (quoting *Jackson*, 137 Wn.2d at 729 (internal quotation marks omitted)). We therefore hold that RCW 39.12.026(1)'s phrase "data collected" is unambiguously limited to data collected through the wage survey process and does not apply to wage rates "adopt[ed]" from CBAs pursuant to RCW 39.12.015(3).

G. RCW 39.12.015(3) does not violate article II, section 37 because it does not "render erroneous" a "straightforward reading" of RCW 39.12.026(1)

As stated, the only constitutional question for this court is whether RCW 39.12.015(3) violates the second part of the article II, section 37 test, that is, whether RCW 39.12.015(3) renders erroneous a straightforward determination of the scope of rights or duties imposed under an existing statute (here, RCW 39.12.026). One way that a new statute might render an old statute erroneous is if the new statute conflicts with existing law or alters criteria established by existing law. *Inslee*, 198 Wn.2d at 594-95 (citing *Wash. Educ. Ass'n*, 93 Wn.2d at 38-41).

That is the flaw that the Court of Appeals described in this case. Specifically, the Court of Appeals stated that "while RCW 39.12.026(1) references

RCW 39.12.015, the reference is ambiguous" such that it is "not clear whether the legislature intended RCW 39.12.026(1) to apply to all of RCW 39.12.015, or only to RCW 39.12.015(3)(b), the non-CBA scenario." *AGC* III, slip op. at 14-15. The Court of Appeals also opined that "there is no qualifying language within RCW 39.12.026(1), such as 'when conducting wage surveys,' which would clarify an intention to exclude the one-county limitation found in RCW 39.12.026(1) from applying to RCW 39.12.015(3)(a)." *Id.* at 15. But the Court of Appeals failed to consider the second subsection of RCW 39.12.026, which indicates that the whole statute refers to wage surveys. It failed to appreciate the difference in language between RCW 39.12.026(1)'s mandate concerning "data collected" and RCW 39.12.015(3)(a)'s mandate concerning wage rates "adopt[ed]" from CBAs. And it failed to consider the history of amendments to that statute. All of that language, history, and context—combined with our duty to harmonize statutes if possible— indicate that the RCW 39.12.026 as a whole refers to wage surveys. Thus, RCW 39.12.015(3) does not render a straightforward reading of RCW 39.12.026 erroneous.

Applying the other article II, section 37 tests also supports our conclusion. As we have explained, a new statute violates section 37 if it requires "'a thorough search of existing laws in order to understand [its] effect'" on other statutes. *Black*, 195 Wn.2d at 211 (quoting *El Centro de la Raza*, 192 Wn.2d at 131-32). But a

25

"'[c]omplete act[]'" that merely "'supplement[s] prior acts or sections thereof without repealing them'" does not violate section 37. *Inslee*, 198 Wn.2d at 595 (first alteration in original) (quoting *Citizens*, 149 Wn.2d at 642). As in *Inslee*, RCW 39.12.015(3) "supplements" RCW 39.12.026, but does not supplant it. RCW 39.12.026(1) retains the meaning it has always had: it applies to data collected from wage surveys.

AGC notes that we have explained that one purpose of article II, section 37 is to "'avoid confusion, ambiguity, and uncertainty in the statutory law' and ensure the Legislature is aware of the impact a bill has on already existing laws." Answer to Pet. for Discr. Rev. at 19 (quoting *Amalg. Transit Union Loc. 587 v. State*, 142 Wn.2d 183, 246, 11 P.3d 762 (2000)). This is certainly true. AGC continues, however, that testimony by the L&I legislative director, who testified before the Washington State Senate Labor and Commerce Committee in 2018, shows that "legislators were misled on SSB 5493's impact and how it would be applied in terms of using multicounty CBA wage rates to set the prevailing wage rates from county to county."[9] *Id.* at 18. But AGC cites no authority to support its unstated

---

[9] The legislative director of L&I testified, "'The law at RCW 39.12.026 . . . prohibits the use of cross-county data to set the prevailing wage. So, we are prohibited in law, this bill [SSB 5493] would not change that, from using wages in [sic] for King County, for work that is performed in King County, to establish the prevailing wage rate in another county.'" Answer to Pet. for Discr. Rev. at 15-16; Suppl. Br. of Resp'ts at 14 n.6 (quoting testimony of Tammy Fellin, Hr'g on S.B. 5493 Before the S. Lab. & Com.

premise that courts look to legislative history to determine whether the legislature was "misled" for article II, section 37 purposes. Instead, our precedent holds that this court looks to the language of the statutes to determine whether article II, section 37 was violated. *E.g.*, *Amalg. Transit*, 142 Wn.2d at 246-56; *Black*, 195 Wn.2d at 206-14; *Inslee*, 198 Wn.2d at 592-95.

Moreover, we generally do not examine legislative history unless a statute is ambiguous. *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 305-06, 268 P.3d 892 (2011). But AGC does not argue that any statutory language is ambiguous—in fact, it explicitly argues that RCW 39.12.015(3)(a) and RCW 39.12.026(1) are unambiguous. Suppl. Br. of Resp'ts at 17. We therefore decline to consider this legislative history.

We remain convinced that RCW 39.12.015(3) does not render RCW 39.12.026 erroneous but simply supplements the law. Contrary to the Court of Appeals' interpretation, it is not "impossible for the industrial statistician to

---

Comm., 65th Leg., Reg. Sess. (Wash. Jan. 11, 2018), at 57 min., 10 sec. to 57 min., 37 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/senate-labor-commerce-committee-2018011113/?eventID=2018011113). Even if it were appropriate to examine legislative history in this context, we have held that testimony before a legislative committee is given "little weight," because it is "unwise to go behind the committee report and examine piecemeal quotations." *N. Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 326-27, 759 P.2d 405 (1988); *Wilmot v. Kaiser Alum. & Chem. Corp.*, 118 Wn.2d 46, 64, 821 P.2d 18 (1991).

comply with both statutes if a multicounty CBA is involved." *AGC* III, slip op. at 16. Rather, RCW 39.12.026 applies only when the industrial statistician uses the wage survey "data collection" method to set the prevailing wage. It does not apply when the industrial statistician uses the newer CBA-adoption method in RCW 39.12.015(3)(a) at all.

CONCLUSION

We hold that RCW 39.12.026(1)'s phrase "all data collected" applies to data collected from wage surveys. It does not apply to wage rates "adopt[ed]" from CBAs under RCW 39.12.015(3)(a). It necessarily follows that RCW 39.12.015(3) does not violate article II, section 37 because it does not render erroneous a straightforward reading of RCW 39.12.026(1).

We therefore reverse the Court of Appeals and remand for further proceedings consistent with this opinion.

28

Gordon McCloud, J.

WE CONCUR:

González, C.J.

Yu, J.

Johnson, J.

Montoya-Lewis, J.

Madsen, J.

Whitener, J.

Stephens, J.

Schubert, J.P.T.