# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN OF WASHINGTON, a Washington public benefit corporation; and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON OPTIONS, INC., a Washington profit corporation, | No. 58280-5-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE, | |
| Respondent. | |

VELJACIC, A.C.J. — Kaiser Foundation Health Plan of Washington sought review in Thurston County Superior Court of the Department of Revenue's (DOR) denial of a refund for real estate excise taxes (REET) it paid as a result of its acquisition of Group Health Cooperative (GHC) and Group Health Options (GHO). The superior court granted summary judgment in the DOR's favor. Kaiser argues that former RCW 82.45.033(1) (2010),[1] which addresses controlling interests related to sales of real property, does not contemplate transfers involving nonprofit corporations, and that the transaction did not amount to a "controlling interest" transfer subject to the REET.

---

[1] The legislature amended RCW 82.45.033 in 2019. *See* LAWS OF 2019, ch. 424, § 4. Except where otherwise indicated, references to RCW 82.45.033(1) refer to the statutory language in effect at the time of Kaiser's acquisition in 2017.

We reverse the summary judgment order in the DOR's favor and hold that RCW 82.45.033(1) is ambiguous regarding the imposition of REET on when a controlling interest in a nonprofit corporation is transferred, and that ambiguity must be resolved in Kaiser's favor.[2]

FACTS

I.    THE ACQUISITION

In 2017, Kaiser acquired GHC and its subsidiaries, including GHO. Subsidiaries aside, three nonprofit organizations were involved in the transaction: GHC, Kaiser, and Group Health Community Foundation (GHCF). GHC was a health care services provider. Kaiser operated a "nonprofit . . . health care plan." Clerk's Papers (CP) at 340. GHCF was a nonprofit corporation addressing health-related needs. GHCF was formed in 2015 in contemplation of Kaiser acquiring GHC.

The acquisition was governed by the Acquisition Agreement (Agreement). Pursuant to the Agreement, GHC would terminate its outstanding membership interests and Kaiser would become the sole voting member. The Agreement also required Kaiser to pay GHCF the purchase price of $1.8 billion, less a refund of dues returned to the former GHC voting members. Pursuant to the Agreement, GHC changed its name to Kaiser Foundation Health Plan of Washington (KFHPWA) and Kaiser change its name to Kaiser Foundation Health Plan of Washington (KFHPWA Holdings), and Kaiser would pay all transfer taxes.

---

[2] Kaiser also argues that the acquisition was not a sale subject to REET because it was exempt under RCW 82.45.010(3)(q). Because of our holding, we need not address this argument.

II.     PAYMENT OF REAL ESTATE EXCISE TAXES (REET)

At the time of acquisition, GHC and GHO[3] owned real property in Washington.  In 2017, GHC (nka KFHPWA) and GHO (nka Kaiser Foundation Health Plan of Washington Options, Inc. (KFHPWAO)) filed REET returns with the DOR reporting a change in controlling interest in GHC from the voting membership of GHC to Kaiser.  The forms listed the Washington real property held by GHC or GHO at the time of transfer.  As required in order to challenge a tax, Kaiser reported and paid $6,605,516.27 in REET on the GHC property and $73,187.55 on the GHO property, for a total of $6,678,703.82.

III.     PROCEDURAL HISTORY

After Kaiser paid REET, it petitioned the DOR for a refund.  The DOR denied Kaiser's refund request, and Kaiser made an administrative appeal, in which the DOR affirmed its decision.

Kaiser then brought this action in Thurston County Superior Court under RCW 82.32.180, alleging that the acquisition was not subject to REET.  Kaiser and the DOR brought cross-motions for summary judgment.  The superior court granted the DOR's motion.

Kaiser appeals the summary judgment order.

ANALYSIS

I.     STANDARD OF REVIEW

We review the superior court's order on a motion for summary judgment de novo. *Bangerter v. Hat Island Cmty. Ass'n*, 199 Wn.2d 183, 188, 504 P.3d 813 (2022); *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014).  A superior court may grant summary judgment if the evidence, viewed in the light most favorable to the nonmoving party,

---

[3] GHO nka KFHPWAO was not a party to the Agreement.  It is a Washington for-profit corporation wholly owned by GHC (nka KFHPWA) that owned real property in Washington.  CP 226.

establishes that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Bangerter*, 199 Wn.2d at 188; *Wilkinson*, 180 Wn.2d at 249. A material fact is one that affects the outcome of the litigation. *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

Here, the material facts are not in dispute. Rather, the dispute in this case involves the application of statutes to the facts, which is a question of law.

## II. APPLYING REET TO NONPROFIT ORGANIZATIONS

Kaiser argues that it owes no REET in relation to the acquisition because the controlling statute (RCW 82.45.033(1)(a) & (b)) does not contemplate the imposition of REET for the transfer of a controlling interest in nonprofit organizations. We conclude that RCW 82.45.033(1) is ambiguous, and that ambiguity must be resolved in Kaiser's favor.

### A. Statutory Interpretation

We review questions of statutory interpretation de novo. *Ekelmann v. City of Poulsbo*, 22 Wn. App. 2d 798, 807, 513 P.3d 840 (2022). Our fundamental objective in construing a statute is to ascertain and carry out the legislature's intent. *Id.* In making this determination, "[w]e consider the language of the statute, the context of the statute, related statutes, and the statutory scheme as a whole." *Id.*

If the statute's plain language is unambiguous, no further interpretation is necessary. *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 479, 491 P.3d 1012 (2021). However, a statute is ambiguous if the language is subject to more than one reasonable interpretation. *Id.* We can attempt to resolve an ambiguity by considering other sources that may show legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.*

4

If there is any doubt as to the meaning of a taxation statute, the statute must be construed most strongly against the DOR and in the taxpayer's favor. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396-97, 103 P.3d 1226 (2005). Conversely, tax exemptions are construed strictly against the taxpayer. *Green Collar Club v. Dep't of Revenue*, 3 Wn. App. 2d 82, 94, 413 P.3d 1083 (2018).

B.      REAL ESTATE EXCISE TAX (REET)

The REET is due on each sale of real property in Washington. RCW 82.45.060. The definition of "sale" under the REET statutory scheme includes "the transfer or acquisition . . . of a controlling interest in any entity with an interest in real property" located in Washington. RCW 82.45.010(2)(a). REET is calculated based on the "selling price" of the real property, meaning "the true and fair value of the property conveyed." RCW 82.45.030(1). If what is transferred is a controlling interest, the selling price is "the true and fair value of the real property owned by the entity and located in this state." RCW 82.45.030(2).

RCW 82.45.033(1) provides the definition of "controlling interest":

> (1) As used in this chapter, the term "controlling interest" has the following meaning:
> (a) In the case of a corporation, either fifty percent or more of the total combined voting power of all classes of stock of the corporation entitled to vote, or fifty percent of the capital, profits, or beneficial interest in the voting stock of the corporation; and
> (b) In the case of any other corporation, or a partnership, association, trust, or other entity, fifty percent or more of the capital, profits, or beneficial interest in such corporation, partnership, association, trust, or other entity.

C.      RCW 82.45.033(1) is Ambiguous Regarding Nonprofit Corporations

Kaiser argues that RCW 82.45.033(1)(a) unambiguously does not contemplate a nonprofit corporation. The DOR argues that RCW 82.45.033(1)(b) unambiguously includes a nonprofit

corporation. We conclude that the language in RCW 82.45.033(1) is ambiguous regarding nonprofit corporations.

Kaiser's interpretation of RCW 82.45.033(1) is that subsection (a) expressly applies to corporations and therefore subsection (b) applies to entities other than corporations. Kaiser points out that the definition given for "controlling interest" in corporations involves stock and that the Washington Nonprofit Corporation Act forbids a nonprofit corporation from issuing shares of stock. *See* former RCW 24.03.030(1) (1986) ("A corporation subject to this chapter: (1) Shall not have or issue shares of stock."). Based on its plain language, Kaiser asserts, subsection (a) can only be used to determine whether a controlling interest has been conveyed when dealing with a corporation with voting stock. A nonprofit corporation is not contemplated in this subsection because a nonprofit corporation cannot issue stock. Former RCW 24.03.030(1).

Kaiser emphasizes that subsection (b) necessarily does not apply to corporations. Because subsection (a) addresses corporations, the term "other entity" in subsection (b) must apply to entities other than corporations.

This is a reasonable interpretation. Subsection (a) expressly applies "[i]n the case of a corporation." This language suggests an intent by the legislature that subsection (a) will govern the transfer of a controlling interest in *any* corporation.

The DOR relies on RCW 82.45.010(2)(a), which states that a sale includes the transfer of a controlling interest in "any entity" with an interest in property. "Any entity" would include a nonprofit corporation. Therefore, the DOR asserts that the phrase "other entity" in subsection (b) serves as a catchall, applying to any type of entity other than a corporation with voting stock. This would include a nonprofit corporation.

6

This, too, is a reasonable interpretation. RCW82.45.010(2)(a) expressly refers to the transfer of a controlling interest in any entity. This language suggests an intent by the legislature to tax the transfer of a controlling interest in all entities, including nonprofit corporations.

However, a statute is ambiguous if the language is subject to more than one reasonable interpretation. *Gowman*, 18 Wn. App. 2d at 479. To resolve this ambiguity, we can consider other sources that may show legislative intent. *Id.* Principles of statutory construction are not dispositive here, and there is no pertinent legislative history or cases interpreting RCW 82.45.033(1).

However, subsequent amendments to RCW 82.45.033(1) are instructive. In 2019 the legislature amended the statutory definition of the term "controlling interest" as follows (changes emphasized):

> (1) As used in this chapter, the term "controlling interest" has the following meaning:
> (a) In the case of a *profit* corporation, either fifty percent or more of the total combined voting power of all classes of stock of the corporation entitled to vote, or fifty percent of the capital, profits, or beneficial interest in the voting stock of the corporation; and
> (b) In the case of *any other corporation, or* a partnership, association, trust, or other entity, fifty percent or more of the capital, profits, or beneficial interest in such *corporation,* partnership, association, trust, or other entity.

LAWS OF 2019, ch. 424, § 4. The legislature's amendments expressly stated that subsection (a) applies only to for-profit corporations and subsection (b) applies to all other corporations, which would include nonprofit corporations. In other words, the legislature by amendment implemented the interpretation the DOR argues in this case.

A similar situation occurred in *Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 587 P.2d 535 (1978). In *Vita Food Products*, the taxation statute at issue was also subsequently amended to match the interpretation the state urged the court to adopt. *Id.* at 134. The court in that case

declared that the state could not have it both ways; it could not contend that the prior statute "imposed a tax and then argue that the amendment . . . was meaningless.  That is inconsistent." *Id*.  The court stated,

> The presumption is that every amendment is made to effect some material purpose. An amendment of an unambiguous statute clearly indicates that the change is material.  The State cannot have it both ways.  It contends that the prior statute was clear and imposed a tax and then argues that the amendment, made at its request, was meaningless.  That is inconsistent.

*Id.* (citations omitted).

This case is different because we have concluded that RCW 82.45.033(1) is ambiguous while the statute in *Vita Food Products* was unambiguous.  But the principle is the same.  If RCW 82.45.033(1) was unambiguous as the DOR claims, there would have been no need for the 2019 amendments.  And if we were to adopt the DOR's interpretation of the pre-2019 statute, the amendments would be meaningless.

Ultimately, we conclude the meaning of this taxation statute is unclear.[4]  Therefore, the statute must be construed most strongly against the DOR and in Kaiser's favor.  *See Agrilink Foods*, 153 Wn.2d at 396-97.  We adopt Kaiser's interpretation of former RCW 82.45.033(1), and hold that the REET cannot be imposed on the transfer of a controlling interest in a nonprofit corporation.

## CONCLUSION

We reverse the superior court's grant of summary judgment in the DOR's favor and remand for further proceedings consistent with this opinion.

---

[4] The DOR argues that RCW 82.45.033(1) represents a tax exemption rather that a taxation imposition.  But RCW 82.45.010(2)(a), to which RCW 82.45.033(1) applies, clearly is a tax imposition statute.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

I concur:

_____
Maxa, J.

LEE, J. (dissenting) — I disagree with the majority that RCW 82.45.033(1)[5] is ambiguous as it relates to nonprofit corporations. RCW 82.45.033(1)(a) plainly applies to corporations that issue stock and RCW 82.45.033(1)(b) plainly captures all other entities, including nonprofit corporations like Kaiser, with its catchall phrase "or other entity." For this reason, I dissent.

A.    PRINCIPLES OF STATUTORY CONSTRUCTION

We review issues of statutory interpretation de novo. *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 478, 491 P.3d 1012 (2021). Our goal in interpreting a statute is to determine and give effect to the legislature's intent. *Associated Gen. Contractors of Wash. v. State*, ___ Wn.3d ___, 544 P.3d 486, 492 (2024). We derive legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole. *Id*.

In interpreting the legislature's intent, we avoid "strained, unlikely, or unrealistic interpretations." *First Student, Inc. v. Dep't of Revenue*, 194 Wn.2d 707, 711, 451 P.3d 1094 (2019). A statute is ambiguous if it is susceptible to two or more reasonable interpretations; however, "'a statute is not ambiguous merely because different interpretations are conceivable.'" *Aventis Pharms., Inc. v. Dep't of Revenue*, 5 Wn. App. 2d 637, 642, 428 P.3d 389 (2018) (internal quotation marks omitted) (quoting *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009)).

Statutory amendments are presumed to "effect some material purpose," and generally, "amendment of an unambiguous statute clearly indicates that the change is material." *Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 134, 587 P.2d 535 (1978). However, this presumption may

---

[5] The legislature amended RCW 82.45.033 in 2019. *See* LAWS OF 2019, ch. 424, § 4. As in the majority opinion, except where otherwise indicated, references to RCW 82.45.033(1) refer to the statutory language in effect at the time of Kaiser's acquisition of GHC in 2017.

be rebutted "by clear evidence that the legislature intended an interpretive clarification." *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wn.2d 736, 751, 257 P.3d 586 (2011). "The statements of individual lawmakers, especially bill sponsors, can . . . be instructive in discerning the reasons for changes in legislation." *Headspace Int'l LLC v. Podworks Corp.*, 5 Wn. App. 2d 883, 896, 428 P.3d 1260 (2018), *review denied*, 192 Wn.2d 1027 (2019).

B.     REAL ESTATE EXCISE TAX (REET)

1.     RCW 82.45.033(1) is Unambiguous and Applies to Nonprofit Corporations

Washington imposes a tax, known as the real estate excise tax (REET), on each sale of real property. RCW 82.45.060(1).[6] A taxable "sale" includes the "transfer or acquisition . . . of a *controlling interest* in *any entity* with an interest in real property located in this state for a valuable consideration." RCW 82.45.010(2)(a)[7] (emphasis added). A seller is defined as "any individual, receiver, assignee, . . . corporation, association, society, or any group of individuals acting as a unit, whether mutual, cooperative, fraternal, *nonprofit or otherwise*; but it shall not include the United States or the state of Washington." RCW 82.45.020 (emphasis added).

In the statutory provision at issue here, "controlling interest" is defined as:

(1) As used in this chapter, the term "controlling interest" has the following meaning:

(a) In the case of a corporation, either fifty percent or more of the total combined voting power of all classes of stock of the corporation entitled to vote, or fifty percent of the capital, profits, or beneficial interest in the voting stock of the corporation; and

---

[6] RCW 82.45.060 was amended in 2019, but there were no substantive changes affecting this opinion, so we cite to the current statute.

[7] RCW 82.45.010(2)(a) was amended in 2018, 2019, and 2022, but there were no substantive changes affecting this opinion, so we cite to the current statute.

(b) In the case of a partnership, association, trust, *or other entity*, fifty percent or more of the capital, profits, or beneficial interest in such partnership, association, trust, *or other entity*.

RCW 82.45.033(1) (emphasis added).

Kaiser argues that RCW 82.45.033(1)(a) does not apply to nonprofit corporations. The majority appears to agree that the plain language of subsection (a) clearly applies to corporations with voting stock. *See* former RCW 24.03.030(1) (1986). On this, I agree. The plain language of RCW 82.45.033(1)(a) discusses a corporation in relation to its voting stock; therefore, RCW 82.45.033(1)(a) plainly captures *only* corporations that issue stock and is not applicable to nonprofit corporations.

However, I disagree with the majority that subsection (a) can be reasonably interpreted as the legislature intending to include in subsection (a) the transfer of a controlling interest in "*any* corporation." Majority at 6 (emphasis in original). Interpreting RCW 82.45.033(1)(a) as applying to "any corporation" requires changing the statutory language from "a corporation" to "any corporation." We cannot do that under the guise of statutory construction. *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018); *see also Univ. of Wash. v. City of Seattle*, 188 Wn.2d 823, 832, 399 P.3d 519 (2017) (when the language is clear, we must "'assume the Legislature meant exactly what it said and apply the statute as written.'" (internal quotation marks omitted) (quoting *Town of Woodway v. Snohomish County,* 180 Wn.2d 165, 174, 322 P.3d 1219 (2014))).

The plain language of RCW 82.45.033(1)(a) applies to corporations that issue stock; the statute is silent as to other types of corporations and entities. Instead, entities other than corporations that issue stock are clearly captured under RCW 82.45.033(1)(b) by the statute's inclusion of the catchall phrase "or other entity."

Kaiser argues that RCW 82.45.033(1) is ambiguous because if subsection (1)(b)'s reference to "or other entity" includes nonprofit corporations, any reference to "corporation" in subsection (a) is superfluous. The Department of Revenue (DOR) argues that RCW 82.45.033(1) is ambiguous because neither subsection (a) nor (b) expressly mention nonprofit corporations and the superior court correctly interpreted subsection (b) to include nonprofit corporations after conducting statutory analysis.

The majority agrees with the parties that RCW 82.45.033(1) is ambiguous because both parties have "reasonable" interpretations. Majority at 6-7. I depart from the majority on this point. Instead, I would hold that RCW 82.45.033(1) is not ambiguous. RCW 82.45.033(1)(a) applies to stock corporations and RCW 82.45.033(1)(b) applies to all other types of entities. The plain language of RCW 82.45.033(1)(b) unambiguously captures *all other entities*, including nonprofit corporations, with the catchall phrase "or other entity."

The goal of statutory interpretation is to give effect to legislative intent, and we derive that intent by considering the plain language of the statute *in addition to* the context of the statute, related provisions, and the statutory scheme as a whole. *Associated Gen. Contractors*, 544 P.3d at 492. In other words, RCW 82.45.033(1) cannot be read in a vacuum.

Looking to the broader statutory scheme, Washington imposes REET on each sale of real property. RCW 82.45.060(1). A sale is explicitly defined as the transfer or acquisition of a controlling interest in *any entity* with an interest in real property. RCW 82.45.010(2)(a). "Any entity" would include nonprofit corporations. Indeed, the statute defining "seller" expressly includes nonprofits. RCW 82.45.020.

To say, as the majority does, that the language of RCW 82.45.033(1) "suggests an intent by the legislature that subsection (a) will govern the transfer of a controlling interest in *any*

13

corporation," thereby implicitly excluding nonprofit corporations that have no voting stock, changes the plain language in subsection (a), ignores the phrase "or other entity" in subsection (b), and makes little sense in light of the plain language of the statute, context of the statute, related provisions, and the statutory scheme as a whole. Majority at 6 (emphasis in original). In interpreting the legislature's intent, we avoid "strained, unlikely, or unrealistic interpretations." *First Student*, 194 Wn.2d at 711.

Because the majority's interpretation of RCW 82.45.033(1) changes the language in subsection (a), and is strained and unreasonable in light of the context of the statute, related statutes, and the statutory scheme as a whole, I cannot agree with the majority that RCW 82.45.033(1) is ambiguous. Instead, I would hold that RCW 82.45.033(1) is unambiguous, and RCW 82.45.033(1)(b) is applicable to the transfer of a controlling interest in nonprofit corporations such as Kaiser.

2.      2019 Amendments

The majority points to subsequent amendments of RCW 82.45.033(1) as indicative of the statute's ambiguity. In 2019, the legislature amended the definition of controlling interest:

(1) As used in this chapter, the term "controlling interest" has the following meaning:

(a) In the case of a <u>profit</u> corporation, either fifty percent or more of the total combined voting power of all classes of stock of the corporation entitled to vote, or fifty percent of the capital, profits, or beneficial interest in the voting stock of the corporation; and

(b) In the case of <u>any other corporation, or</u> a partnership, association, trust, or other entity, fifty percent or more of the capital, profits, or beneficial interest in such <u>corporation,</u> partnership, association, trust, or other entity.

LAWS OF 2019, ch. 424, § 4 (amendments underlined).

As the majority notes, the amendments clarify that subsection (a) applies only to profit corporations and subsection (b) captures all other corporations, including nonprofit corporations. However, the majority then cites to *Vita Food Products* for the argument that if "RCW 82.45.033(1) was unambiguous as the DOR claims, there would have been no need for the 2019 amendments." Majority at 8. Further, the majority asserts, if we adopt the DOR's interpretation of the pre-2019 statute, the amendments would be meaningless. I disagree.

The majority prematurely halts its analysis and assumes that RCW 82.45.033(1) is ambiguous by the mere existence of the 2019 amendments. The majority fails to assess whether the legislature intended an interpretative clarification before cursorily concluding that if we adopted the DOR's interpretation of the pre-2019 statute, the amendments would have been meaningless.

Generally, statutory amendments are presumed to effect some material purpose and "[a]n amendment of an unambiguous statute clearly indicates that the change is material." *Vita Food Prods.*, 91 Wn.2d at 134. But, this presumption is rebuttable "by clear evidence that the legislature intended an interpretive clarification." *Roe*, 171 Wn.2d at 751. Here, we have clear evidence that the legislature intended an interpretative clarification.

Representations by individual lawmakers can "be instructive in discerning the reasons for changes in legislation." *Headspace Int'l*, 5 Wn. App. 2d at 896. A senate bill report regarding the amendments to RCW 82.45.033(1) clarified that "[t]he definition of 'controlling interest' applies to any corporation," and under a section in the report titled, "Effect of Changes Made," stated that the amendments "*[c]larifie[d]* [that] the definition of 'controlling interest' applie[d] to any corporation." S.B. REP. ON S.B. 5998, 66th Leg., Reg. Sess. (Wash. 2019) (emphasis added).

15

Kaiser urged, and the majority agreed, that this senate bill report should be disregarded because the final bill report removed any reference to the "'clarification'" as it pertained to "controlling interest." *See* Reply Br. of Appellant at 32. However, in comparing the original bill report with the final bill report, it is evident that the final bill report simply did not reproduce the "effects" section from the original report. *See* FINAL. B. REP. ON ENGROSSED SUBSTITUTE S.B. 5998, 66th Leg., Reg. Sess. (Wash. 2020). Thus, *none* of the "effects" of the amendments, not just references to "clarification," were listed. Indeed, the purported removal of references to "clarification" does not appear so much to be a specific or deliberate removal rather than part of a wholesale cut from the final bill report for the sake of brevity. Therefore, Kaiser's argument is unpersuasive, and I would hold that there is clear evidence the 2019 amendments were an interpretative clarification.

## CONCLUSION

For the reasons stated above, I dissent from the majority and would hold that RCW 82.45.033(1) is unambiguous and that RCW 82.45.033(1)(b) is applicable to the transfer of a controlling interest in nonprofit corporations such as Kaiser.

Lee, J.