FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 24, 2024

_Ceanzález C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 24, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANTIO, LLC; AZUREA I, LLC; BACK BOWL I, LLC; CANDICA, LLC; CERASTES-WTB, LLC; GCG EXCALIBUR, LLC; LINDIA, LLC; OAK HARBOR CAPITAL, LLC; OAK HARBOR CAPITAL II, LLC; OAK HARBOR CAPITAL III, LLC; OAK HARBOR CAPITAL IV, LLC; OAK HARBOR CAPITALVI, LLC; OAK HARBOR CAPITALVII, LLC; OAK HARBOR CAPITAL X, LLC; OAK HARBOR CAPITAL XI, LLC; and VANDA, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 102223-9<br><br>En Banc<br><br>Filed: October 24, 2024 |
| Petitioners, | ) ) | |
| v. | ) ) | |
| WASHINGTON STATE DEPARTMENT OF REVENUE, | ) ) ) ) | |
| Respondent. | ) ) | |

OWENS, J.—Petitioners are 16 related limited liability companies (LLCs) that generate all of their income from investments. RCW 82.04.4281(a) allows an entity to deduct "[a]mounts derived from investments" from business and occupation (B&O) taxable income. This court has previously defined "investments" in RCW 82.04.4281 to mean "'incidental investments of surplus funds.'" *O'Leary v. Dep't of Revenue*, 105 Wn.2d 679, 682, 717 P.2d 273 (1986) (quoting *John H. Sellen Constr. Co. v. Dep't of Revenue*, 87 Wn.2d 878, 883, 558 P.2d 1342 (1976)). Under that definition, the LLCs would not be

able to deduct income earned through their primary business activities. However, after we decided *O'Leary*, the legislature amended the investment deduction statute. The question for this court is whether the legislature abrogated *O'Leary*'s definition of investments when it amended the statute. We hold that the legislature did not abrogate *O'Leary*'s definition of investments because it did not express clear intent to do so.

FACTS

Petitioners are a group of 16 related LLC investment companies that buy and sell distressed debt instruments such as credit card debt. All of their income comes from owning or trading in these investments. In 2019, the LLCs paid B&O tax on their income and then applied for a refund for the previous several years. They claimed that 100 percent of their income was deductible under RCW 82.04.4281 because it was all "investment income." The relevant section of RCW 82.04.4281 states, "(1) In computing tax there may be deducted from the measure of tax: (a) Amounts derived from investments." The statute does not define "investments." RCW 82.04.4281.

The Department of Revenue (Department) conducted an audit and denied the LLCs' refund claim. The LLCs brought an original action under RCW 82.32.180 to challenge this decision. The Department moved for summary judgment, which the LLCs opposed. The superior court granted summary judgment for the Department, finding that the legislature did not modify *O'Leary*'s definition of investment—incidental investment of surplus funds—when it amended the statute in 2002. Verbatim Rep. of Proc. (July 8, 2022) at 20-

21. Therefore, the LLCs did not qualify for the deduction. The LLCs filed a motion for reconsideration, which the superior court denied.

The LLCs appealed and the Court of Appeals affirmed the trial court, finding that this court had previously defined "investments" in the statute to refer only to "incidental investments." *Antio, LLC v. Dep't of Revenue*, 26 Wn. App. 2d 129, 137, 527 P.3d 164 (2023). Although the legislature amended the statute in 2002, the court found no evidence that this amendment superseded *O'Leary*. *Id.* at 140. Because the LLCs' income did not meet *O'Leary*'s definition of investments, the Court of Appeals found that the LLCs were not entitled to the deduction. *Id*. The LLCs petitioned for review, which this court granted. *Antio, LLC v. Dep't of Revenue*, 2 Wn.3d 1001 (2023).

*History of the Investment Income Deduction*

The State of Washington has had some form of investment income deduction since 1935. LAWS OF 1935, ch. 180, §§ 4, 12(a). From 1970 through 2002, the statute read:

> In computing tax there may be deducted from the measure of tax amounts derived by persons, other than those engaging in banking, loan, security, or other financial businesses, from investments or the use of money as such, and also amounts derived as dividends by a parent from its subsidiary corporations.

SUBSTITUTE H.B. 1016, at 2, 46th Leg., Reg. Sess. (Wash. 1980). This court released several decisions interpreting the statute over that period. In *Sellen*, the court interpreted the phrase "other financial businesses." 87 Wn.2d at 882. In that

3

case, five businesses sought to deduct their investment income under the statute.[1]

*Id.* at 879-80. Each business made between 0.2 percent and 3.0 percent of its

gross income from investments. *Id.* The State opposed the deduction, arguing that

the businesses were "other financial businesses" under the statute and therefore

barred from taking the deduction altogether. *Id.* at 882. This court found that the

businesses were not "other financial businesses." *Id.* at 882-84. It defined "other

financial businesses" as businesses similar to banking, loan, or security businesses

"whose primary purpose and objective is to earn income through the utilization of

significant cash outlays." *Id.* at 882. This case concerned *who* could take the

deduction.

Ten years later, in *O'Leary,* the court answered the separate question of *what*

could be deducted under the statute. To do this, it defined the term "investments" in

RCW 82.04.4281. In *O'Leary*, a company that bought and sold real estate claimed that

the interest payments it received were deductible "investments." 105 Wn.2d at 680. The

court defined investments under the statute to mean "'incidental investment of surplus

funds.'" *Id.* at 682 (quoting *Sellen*, 87 Wn.2d at 883). It held that "[w]hether an

investment is 'incidental' to the main purpose of a business is an appropriate means of

distinguishing those investments whose income should be exempted from the B & O tax

of RCW 82.04.4281." *Id.* The *O'Leary* court relied on *Sellen*, where the *Sellen* court

---

[1] These businesses were a construction company, a brewery, two medical nonprofits, and a cemetery.

assumed the deduction should be available to taxpayers making incidental investments. *Id.* The court also considered the larger statutory scheme in which "[e]xemptions to the tax laws are to be construed narrowly" and "'[t]axation is the rule and exemption is the exception.'" *Id*. (quoting *Budget Rent-a-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 174, 500 P.2d 764 (1972)). Therefore, it decided "investments" should be construed narrowly to apply only to incidental investments. Because the real estate contracts held by the company in *O'Leary* were not incidental investments made with surplus funds, the company was not entitled to take the deduction. *Id*. at 682-83.

This court then decided another case that refined the meaning of "other financial businesses" in the statute, again addressing *who* could take the deduction. In *Simpson*, this court held that a holding company that provided administrative and managerial services to its subsidiaries was an "other financial business" and therefore ineligible for the deduction. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 142-43, 3 P.3d 741 (2000). Even though only a small proportion of the company's revenue came from investments, and even though the primary business of the *subsidiaries* was not "financial," the court found that the holding company itself was a financial business. *Id.* at 143-44. This is because its primary purpose was to "earn income through the utilization of significant cash outlays" and it was comparable to a banking, loan, or security business. *Id.* at 156. This decision further restricted what types of entities could claim the deduction.

The business community of the state reacted strongly to *Simpson*, and the legislature took swift action.  The following year, the legislature passed a bill that would have frozen the application of the *Simpson* decision and reverted to the previous interpretation of what constituted an "other financial business."  H.B. 1361, at 19, 57th Leg., Reg. Sess. (Wash. 2001).  The bill also directed the Department to work with affected businesses to propose a potential amendment to the statute.  Governor Locke vetoed the portion of this bill that would have reverted to the previous interpretation of the statute, noting that it was almost certainly unconstitutional.  LAWS OF 2001, ch. 320, at 1625-26 (Governor Locke's partial veto message).  However, the governor stated that he would direct the Department to apply the investment income deduction as it had prior to the *Simpson* decision and would convene a committee to rewrite the statute.  *Id.*

The following year, the legislature amended the investment income deduction statute to its current form.  The statute reads:

(1) In computing tax there may be deducted from the measure of tax:

(a) *Amounts derived from investments*;

(b) Amounts derived as dividends or distributions from the capital account by a parent from its subsidiary entities; and

(c) Amounts derived from interest on loans between subsidiary entities and a parent entity or between subsidiaries of a common parent entity, but only if the total investment and loan income is less than five percent of gross receipts of the business annually.

(2) The following are not deductible under subsection (1)(a) of this section:

(a) Amounts received from loans, except as provided in subsection (1)(c) of this section, or the extension of credit to another, revolving credit arrangements, installment sales, the acceptance of payment over time for goods or services, or any of the foregoing that have been transferred by the originator of the same to an affiliate of the transferor; or

(b) *Amounts received by a banking, lending, or security business.*

RCW 82.04.4281 (emphasis added). The revised statute eliminated the phrase "other financial businesses." H.B. 2641, at 2, 57th Leg., Reg. Sess. (Wash. 2002). It goes on to define "banking business," "lending business," "security business," and "loan and extension of credit." *Id.* at 2-3. It does not define "investments."

The legislature stated in the intent section of the revised statute that it found the application of the investment income deduction for "other financial businesses" to be "the subject of uncertainty, and therefore, disagreement and litigation between taxpayers and the state." *Id.* at 1. This section also stated that the legislature thought this court's decision in *Simpson* "could lead to a restrictive, narrow interpretation of the deductibility of investment income for business and occupation tax purposes." *Id.* Because of this, the legislature directed the Department to work with affected businesses and revise the statute in a way that would "provide certainty and stability for taxpayers and the state." *Id.* In adopting that recommended revised statute, the legislature intended "to provide a positive environment for capital investment in this state, while continuing to treat similarly situated taxpayers fairly." *Id.* at 1-2.

The LLCs claim that when the legislature revised the investment income statute it made the court's definition of investments in *O'Leary* obsolete. Therefore, they contend that any business that is not a banking, lending, or security business can deduct income derived from investments, even if the investment is not incidental to the business's main purpose.

ISSUE

Did the legislature abrogate *O'Leary*'s definition of "investments" when it amended RCW 82.04.4281?

ANALYSIS

In this tax refund action, we review the trial court's legal conclusions de novo. *Simpson*, 141 Wn.2d at 148. Typically, this court begins statutory interpretation by looking at the plain language of the statute and its context. *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011). However, in this case, the court has previously defined the term "investments" in RCW 82.04.4281. "[W]here statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language." *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017). Although the legislature amended the statute in 2002, it did not alter or define the word "investments." Therefore, rather than interpreting the statute anew, we must decide whether *O'Leary*'s definition is still in effect. We hold that the legislature did not abrogate *O'Leary*'s

8

definition when it revised the statute in 2002 and that "investments" continues to mean incidental investment of surplus funds.

The LLCs argue that the 2002 amendment changed the structure of the statute so dramatically that *O'Leary*'s definition is not relevant. However, a change in the structure of a statute is not enough. A court must find clear legislative intent to abrogate a binding judicial decision like *O'Leary*. *Friends of Snoqualmie Valley v. King County Boundary Rev. Bd.*, 118 Wn.2d 488, 496, 825 P.2d 300 (1992). We presume that the legislature is "aware of judicial construction of prior statutes. Absent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions." *In re Marriage of Williams*, 115 Wn.2d 202, 208, 796 P.2d 421 (1990) (citation omitted). To find that the legislature abrogated this court's definition of investment, we must find clear legislative intent to do so.

Here, the statute contains an intent section that guides our analysis. This section makes clear that the legislature amended the law in response to *Simpson*. H.B. 2641, at 1, 57th Leg., Reg. Sess. (Wash. 2002). Specifically, the legislature intended to reduce "uncertainty" caused by the vague phrase "other financial businesses" in the statute. *Id.* The legislature was also concerned that the court's decision in *Simpson* could lead to a "restrictive, narrow interpretation of the deductibility of investment income." *Id.* Finally, the amendment was intended to "provide a positive environment for capital investment in this state, while continuing to treat similarly situated taxpayers fairly." *Id.* at 2. The intent

9

section does not express a clear legislative intent to abrogate *O'Leary*'s definition of "investments."

Likewise, the body of the statute does not show a clear intent to abrogate *O'Leary*. Instead, the changes the legislature made to the body of the statute reflect the stated purposes of the intent section. The legislature reduced "uncertainty" by defining key terms and by deleting the phrase "other financial businesses" from the list of entities not eligible for the deduction. Removing "other financial businesses" from the statute also avoided *Simpson*'s "restrictive, narrow interpretation" by expanding the types of businesses eligible to take the deduction. These changes promote "a positive environment for capital investment" by increasing transparency, predictability, and by expanding *who* can take the deduction. We should not read additional purposes into the clear language of the statute and its intent section.

The best evidence that the legislature did not intend to abrogate *O'Leary* is what it did *not* do. It did not define "investments" when it amended the statute. It did not indicate in the intent section that it was dissatisfied with the court's definition of investments, nor did it mention *O'Leary* at all. On the contrary, the legislature *did* mention *Simpson*. This shows that the legislature knows how to clearly indicate it disapproves of a decision of this court when it wants to. Further, this court decided *O'Leary* in 1986. Under the principle of legislative acquiescence, a court takes the legislature's "failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision." *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172

10

(2009). The legislature has not redefined "investments" in the statute in the 38 years since

*O'Leary*, despite revising other portions of the statute in this time. This suggests that the

legislature did not abrogate *O'Leary* in 2002.

The LLCs and amici argue that the legislature intended to do more in its amendment

than address concerns raised by *Simpson*. Amicus the Investment Company Institute argues

that the legislature's definition of "security business" shows intent to broaden the definition

of "investments." Under the statute, security businesses cannot take the deduction.

However, the definition of "security business" *excludes* investment companies. RCW

82.04.4281(3)(d). This is because RCW 82.04.4281 incorporates the federal Investment

Company Act of 1940's definition of broker or dealer, which defines "dealer" to not

include investment companies.[2] Therefore, investment companies are not "security

businesses" under RCW 82.04.4281. Amicus argues this shows the legislature intended

investment companies to be eligible for the deduction. However, if *O'Leary*'s definition

of "investment" stands, these businesses would not be able to deduct most of their

investment income.

But the exclusion of certain businesses from the definition of "security business"

does not conflict with *O'Leary*'s definition of "investments." Amicus combines two

questions that should be separate: *who* may take the deduction and *what* they may deduct.

By excluding investment companies from the definition of "security business," the

---

[2] "The term 'dealer' has the same meaning as given in the Securities Exchange Act of 1934, *but does not include an insurance company or investment company*." Investment Company Act of 1940, 15 U.S.C. § 80a-2(11) (emphasis added).

legislature answered the *who* question: investment companies may take the deduction, unlike banking, lending, or security businesses. However, that does not excuse investment companies from restrictions on *what* income may be deducted. *O'Leary* held that businesses may *not* deduct income generated by their primary business activities under RCW 82.04.4281. This is true even if a company's primary activity is investing. Nothing in the definition of "security business" conflicts with *O'Leary*'s definition of "investments," and it certainly does not express clear legislative intent to abrogate that case.

The legislature did not express a clear intent to abrogate *O'Leary*. Thus, we hold that "investments" in RCW 82.04.4281 continues to be defined as it was in *O'Leary*. Businesses can claim only the deduction for investments that are incidental to the main purpose of a business. As a result, the LLCs may not deduct income generated by their main business activities under RCW 82.04.4281.

CONCLUSION

This court has defined "investments" in RCW 82.04.4281 to mean "incidental investment of surplus funds." Although the legislature has since amended the statute, it did not express a clear intent to abrogate this definition. Instead, the legislature's primary purpose in amending the statute was to address *Simpson* and the ambiguous phrase "other financial businesses." The court must presume that the legislature is aware of our prior decisions when it passes a bill, and the fact that this court's definition of investment has remained in effect for 38 years suggests the legislature has acquiesced to it. We hold that

12

*O'Leary*'s definition stands and that the LLCs may not deduct income earned from their

main business activities under the investment income deduction.  We affirm the trial court

and the Court of Appeals.

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

13

No. 102223-9

GORDON McCLOUD, J. (dissenting)—The legislature allows businesses to deduct some forms of income from the total upon which business and occupation (B&O) tax is based. RCW 82.04.4281(1)(a) contains one such deduction—a deduction for investment income: "In computing tax there may be deducted from the measure of tax . . . [a]mounts derived from investments . . . ."

The legislature enacted that quoted language—along with several other material changes—in response to our decisions. In 2000, in the last of those decisions, *Simpson Investment Co. v. Department of Revenue*, we interpreted the types of entities that could take an investment income deduction very narrowly. 141 Wn.2d 139, 3 P.3d 741 (2000). In response, the legislature enacted a new version of RCW 82.04.4281 in 2002. "'The legislature . . . finds that the decision of the state supreme court in *Simpson* . . . could lead to a restrictive, narrow interpretation of the deductibility of investment income for business and occupation tax purposes.'" LAWS OF 2002, ch. 150, § 1. The legislature explicitly stated, "The legislature intends, by adopting this recommended revision of the statute, to provide a positive environment for capital investment in this state, while

1

continuing to treat similarly situated taxpayers fairly." *Id.* And the legislature then enacted its extensive revision.

Several LLCs tried to claim an investment income deduction after that extensive revision of RCW 82.04.4281. But despite the substantial statutory revision and clear expression of legislative intent to improve the investment environment, the majority concludes that these LLCs cannot take the investment income deduction because of a statutory limitation that the statute doesn't actually mention: the supposed limitation of the investment income deduction to businesses that earn only a portion of their income from investments. To reach this conclusion, the majority skips interpreting the statute altogether. Instead, it asserts that we restrictively defined the term "investment" in the prior version of the statute in our 1986 decision *O'Leary v. Department of Revenue*.[1] Then, it continues that we are bound to apply *O'Leary*'s purported definition of "investment" when interpreting the amended statute unless we find that the legislature "clearly" intended to abrogate that definition. Majority at 9. Finding no "clear legislative intent" to abrogate *O'Leary*'s interpretation of that word in the prior version of the statute, the majority holds that the old *O'Leary* case precludes the LLCs from deducting their investment income under the doctrine of stare decisis. *Id.*

---

[1] 105 Wn.2d 679, 682, 717 P.2d 273 (1986).

But stare decisis does not require us to apply *O'Leary*'s restrictive interpretation of "investment income" because *O'Leary* interpreted an older version of the statute. One way the legislature shows "clear and unequivocal" intent to override a prior judicial interpretation of a statute is by "*amending the specific section in question.*" *Friends of Snoqualmie Valley v. King County Boundary Rev. Bd.*, 118 Wn.2d 488, 496, 825 P.2d 300 (1992) (emphasis added). That's exactly what happened here: the legislature amended the statute discussed in *O'Leary*, and the newer version of the statute contains different language and a different legislative intent. The new statutory revisions, combined with the new, express declaration of changed legislative intent, require us to interpret the current statute, not apply a case analyzing the prior statute.

I therefore begin—as our statutory interpretation rules tell us to begin—with the plain language of the current statute. Under that language, the LLCs qualify for the investment income deduction.

Accordingly, I respectfully dissent.

ANALYSIS

I.     Stare decisis does not restrict our analysis in statutory interpretation
cases if the legislature has materially revised a statute

Under the doctrine of stare decisis, our prior precedents are binding unless

we conclude that they are "'incorrect and harmful'" or that "'the legal

underpinnings of [those] precedent[s] have changed or disappeared altogether.'"

*State v. Pierce*, 195 Wn.2d 230, 240, 455 P.3d 647 (2020) (plurality opinion)

(internal quotation marks omitted) (quoting *Deggs v. Asbestos Corp.*, 186 Wn.2d

716, 727-28, 729, 381 P.3d 32 (2016)).[2]

When the legislature makes substantial revisions to a statute, the legislature

is changing "the legal underpinnings" of our prior cases interpreting that statute.

*See Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 252, 350 P.3d 647 (2015)

("'[A] change in legislative intent is presumed when a material change is made in a

statute.'" (alteration in original) (internal quotation marks omitted) (quoting *Davis

v. Dep't of Licensing*, 137 Wn.2d 957, 967, 977 P.2d 554 (1999))). In that

situation, stare decisis is essentially inapplicable. As we have explained, "A

---

[2]*W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66-67, 322 P.3d 1207 (2014) (citing *United States v. Gaudin*, 515 U.S. 506, 521, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 854-55, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022)).

legislative enactment, intended to be comprehensive upon a subject, pre-empts [the judicial] field," and our function is "thereafter limited to an interpretation of what the legislature meant by the language used in the statute." *Windust v. Dep't of Lab. & Indus.*, 52 Wn.2d 33, 36, 323 P.2d 241 (1958). In such statutory interpretation cases—because we are interpreting the actions of another branch of government— "we advert directly to the language of the statute" instead of turning directly to our prior case law. *Id.* at 38.

This is just such a statutory interpretation case, and that is why we must start with the plain language of the current statute. *Id.* at 36 ("'statutory interpretation [cases] require that we restrict ourselves to a determination of the meaning of the statutory language in question'" (quoting *Petersen v. Dep't of Lab. & Indus.*, 40 Wn.2d 635, 637, 245 P.2d 1161 (1952))).

To be sure, this exception to the doctrine of stare decisis is limited. We assume that the legislature is aware of our statutory interpretations. *State v. Blake*, 197 Wn.2d 170, 190, 481 P.3d 521 (2021) (quoting *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004), *overruled on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017)). So if we interpret a statute, and the legislature does *not* change the statute in response,

then we assume that the legislature has *acquiesced* in our interpretation. *City of Federal Way v. Koenig*, 167 Wn.2d 341, 352, 217 P.3d 1172 (2009).

But the legislature did change the statute dramatically since our decisions in *O'Leary* and *Simpson*. It responded by revising and reorganizing the entire statute. *Compare* former RCW 82.04.4281 (1980), *with* current RCW 82.04.4281. That means that the legislature broke any possible assumption of legislative acquiescence in our prior restrictive interpretations of the availability of the investment income deduction and replaced it with an explicit statement of a new legislative intent to broaden the availability of that deduction. Thus, as discussed above, we are now bound by the legislature's explicit statement that it intends to broaden the availability of that deduction. And even if the legislature had not said that explicitly, we would have to presume it. *Darkenwald*, 183 Wn.2d at 252 ("'[A] change in legislative intent is presumed when a material change is made in a statute.'" (alteration original) (internal quotation marks omitted) (quoting *Davis*, 137 Wn.2d at 967); *see also State v. Varga*, 151 Wn.2d 179, 191-92, 86 P.3d 139 (2004) ("It is well-established that the legislature may effectively overrule our decisions interpreting statutory terms by prospectively amending a statute." (citing *State v. Dunaway*, 109 Wn.2d 207, 215-16, 216 n.6, 743 P.2d 1237 (1987);

*Windust*, 52 Wn.2d at 37-38; *State v. Dolson*, 138 Wn.2d 773, 779, 982 P.2d 100

(1999))).

We must therefore interpret the statute de novo to derive the legislature's

intent from the plain language of the revised statute. *See Associated Gen.*

*Contractors of Wash. v. State*, 2 Wn.3d 846, 857, 544 P.3d 486 (2024)

(interpreting amendments as part of statute's plain language (quoting *Columbia*

*Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 440, 395 P.3d 1031

(2017))); *Darkenwald*, 183 Wn.2d at 252.[3]

We took exactly this path when conducting statutory analysis in the face of a

statutory revision over 60 years ago in *Windust*. In that case, a worker died of a

myocardial infarction on the work site due to years of arterial hardening, and his

estate sued his employer. 52 Wn.2d at 35. The estate claimed that the employer

was responsible for the worker's death because it assigned him tasks too strenuous

for his heart condition. *Id.* This claim satisfied our previously established common

---

[3] *See also Detillier v. Kenner Reg'l Med. Ctr.*, 2003-3259, p. 8 (La. 7/6/04), 877 So. 2d 100, 106 ("'[W]hen the Legislature amends a statute that has been subject to interpretation by the courts, a court interpreting the amended statute must take into consideration the entire history of the amended statute, including its original form, the court decisions interpreting the statute in its original and amended forms, and any subsequent amendments.'" (quoting *Lockett v. Dep't of Transp. & Dev.*, 2003-1767, p. 5 (La. 2/25/04), 869 So. 2d 87, 91)).

law standard for workplace injuries. *Id.* (quoting *McCormick Lumber Co. v. Dep't of Lab. & Indus.*, 7 Wn.2d 40, 59, 108 P.2d 807 (1941), *overruled by Windust*, 52 Wn.2d 33). But we did not stop there. We acknowledged that our common law standard conflicted with the more recently adopted statutory standard for workplace injury compensation. *Id.* And under the statutory standard, which provided payment for sudden injuries but not cumulative injuries, the worker's estate would lose. *Id.*

To be sure, we agreed with the worker's estate that stare decisis would usually require us to apply our common law standard. *Id.* But we recognized that that standard conflicts with the applicable statutory standard. *Id.* at 38-39. We therefore concluded that the new statutory standard must apply, not the old common law standard. *Id.* at 39.

That rule about which standard to apply—our court's older standard or the legislature's more recently enacted statutory standard—still applies. I therefore disagree with the majority's decision to rely on the standard from our case law (*O'Leary*).

Instead, "we advert directly to the language of the statute"—to give effect to the legislature's intent and resolve the case. *Windust*, 52 Wn.2d at 38.

The majority appears to believe a different approach applies when this court has previously interpreted a different version of the statute. It cites two different standards that purportedly apply in this context. First, the majority states that "clear" legislative intent is required in order to override a prior judicial interpretation of a statute. Majority at 9. It claims that "a change in the structure of a statute is not enough" to show that clear intent. *Id.*

But the case the majority cites to support this claim actually says the exact opposite: in *Friends of Snoqualmie Valley*, 118 Wn.2d at 496, we explained that one way the legislature can show its "clear and unequivocal" intent to override a prior judicial interpretation is by "*amending the specific section in question.*" (Emphasis added.) As stated, that is exactly what happened in this case: the legislature completely restructured the statute, including amending the section in which the word "investments" appeared, and it paired that amendment with a new statement of legislative intent specifically expressing its intent "to provide a positive environment for capital investment in this state, while continuing to treat similarly situated taxpayers fairly." LAWS OF 2002, ch. 150 § 1. Thus, even if the majority's "clear intent" standard did apply in order to justify interpreting the statute anew, that standard has been amply met in this case.

The majority goes on to state a second standard that it says applies before this court may interpret an amended statute. It quotes *In re Marriage of Williams* for the proposition that "[a]bsent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions." *Id.* (quoting 115 Wn.2d 202, 208, 796 P.2d 421 (1990)).

But the principle stated in *Williams* just means that we will not interpret a statute to override prior decisional law unless there is *some indication* that the legislature intended the statute to override prior decisional law.[4] And the way we determine whether there is some indication of the legislature's intent to override prior decisional law is through statutory interpretation—i.e., by beginning with the "plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7-8, 468 P.3d

---

[4] *See Williams*, 115 Wn.2d at 208 (citing *State v. Calderon*, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984); *State v. McCullum*, 98 Wn.2d 484, 493, 656 P.2d 1064 (1983) (plurality opinion); *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887-88, 652 P.2d 948 (1982); *Green Mt. Sch. Dist. 103 v. Durkee*, 56 Wn.2d 154, 161, 351 P.2d 525 (1960)). These cases cite back to *Neil F. Lampson Equipment Rental & Sales, Inc. v. West Pasco Water System, Inc.*, 68 Wn.2d 172, 176, 412 P.2d 106 (1966), where we held that because there was "not the slightest indication that the legislature intended to overrule the cases holding that an operator with a machine was labor as far as the lien laws are concerned[,] . . . we must assume that the new legislation is in line with our prior decisions."

1056 (2020) (citing *First Student, Inc. v. Dep't of Revenue*, 194 Wn.2d 707, 710,

451 P.3d 1094 (2019)).

Thus, under either of these purported standards, our precedent compels us to

begin by looking at the plain language of the statute in context—in other words, by

engaging in statutory interpretation.

II.     The statute's plain language bars only banks, lenders, and security
        businesses from deducting investment income, not these LLCs

We therefore start, as our cases direct us to start, with "the language of the

statute." Our objective in statutory interpretation is to determine the legislature's

intent. *Associated Gen. Contractors*, 2 Wn.3d at 855 (citing *Dep't of Ecology v.

Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We derive

"legislative intent solely from the plain language of the statute, considering the text

of the provision, the context of the statute, related provisions, amendments, and the

statutory scheme as a whole." *PeaceHealth*, 196 Wn.2d at 7-8 (citing *First Student,

Inc.*, 194 Wn.2d at 710). Amendments and revisions like we have in this case are

part of the statute's plain language. *Associated Gen. Contractors*, 2 Wn.3d at 857

(citing *Columbia Riverkeeper*, 188 Wn.2d at 440).

A. The statute's plain language, before and after the major 2002 revision

The now-defunct version of former RCW 82.04.4281 that we interpreted in

*Simpson* and *O'Leary* said:

11

> In computing tax there may be deducted from the measure of tax amounts derived by persons, other than those engaging in banking, loan, security, or *other financial businesses*, from investments or the use of money as such, and also amounts derived as dividends by a parent from its subsidiary corporations.

(Emphasis added.)

The business community sharply criticized *Simpson*'s expansive definition of "other financial business." In 2001, in response, the legislature began exploring potential amendments to the statute to address not just *Simpson* but other decisions of our court interpreting the old version of the investment income deduction statute:

> The legislature finds that the application of the business and occupation tax deduction provided in RCW 82.04.4281 for investment income of persons other than those engaging in banking, loan, security, or other financial businesses has been the subject of disagreement between taxpayers and the state. *Decisions of the supreme court* have provided some broad guidelines and principles for interpretation of the deduction provided in RCW 82.04.4281, *but these decisions have not provided the certainty and clarity that is desired by taxpayers and the state*. Therefore, it is the intent of the legislature to delay change in the manner or extent of taxation of the investment income until definitions or standards can be developed and enacted by the legislature.

LAWS OF 2001, ch. 320, § 18 (emphasis added). The governor vetoed 2001 legislation that would have revised the statute. LAWS OF 2001, ch. 320, at 1625-26 (Governor Locke's partial veto message).

12

But the legislature did require the Department of Revenue (Department) to report to the legislature's fiscal committees on its work with the business community regarding the application of the "other financial businesses" exclusion to investment income deduction eligibility. LAWS OF 2001, ch. 320, § 20.

Finally, in 2002, the legislature substantially revised the statute. First, the legislature struck the term "financial business" from the statute completely. *Compare* former RCW 82.04.4281, *with* RCW 82.04.4281(1)(a). Second, it limited the entities barred from taking the deduction to banks, lenders, and security businesses in a brand new subsection of the statute. RCW 82.04.4281(2)(b). Third, it amended the deduction itself to broadly say, "In computing tax there may be deducted from the measure of tax . . . [a]mounts derived from investments . . . ." RCW 82.04.4281(1)(a). The statute reads in full:

> (1) In computing tax there may be deducted from the measure of tax:
>
>     (a) Amounts derived from investments;
>
>     (b) Amounts derived as dividends or distributions from the capital account by a parent from its subsidiary entities; and
>
>     (c) Amounts derived from interest on loans between subsidiary entities and a parent entity or between subsidiaries of a common parent entity, but only if the total investment and loan income is less than five percent of gross receipts of the business annually.
>
>     (2) The following are not deductible under subsection (1)(a) of this section:

13

(a) Amounts received from loans, except as provided in subsection (1)(c) of this section, or the extension of credit to another, revolving credit arrangements, installment sales, the acceptance of payment over time for goods or services, or any of the foregoing that have been transferred by the originator of the same to an affiliate of the transferor; or

(b) Amounts received by a banking, lending, or security business.

(3) The definitions in this subsection apply only to this section.

(a) "Banking business" means a person engaging in business as a national or state-chartered bank, a mutual savings bank, a savings and loan association, a trust company, an alien bank, a foreign bank, a credit union, a stock savings bank, or a similar entity that is chartered under Title *30, 31, 32, or 33 RCW, or organized under Title 12 U.S.C.

(b) "Lending business" means a person engaged in the business of making secured or unsecured loans of money, or extending credit, and (i) more than one-half of the person's gross income is earned from such activities and (ii) more than one-half of the person's total expenditures are incurred in support of such activities.

(c) The terms "loan" and "extension of credit" do not include ownership of or trading in publicly traded debt instruments, or substantially equivalent instruments offered in a private placement.

(d) "Security business" means a person, other than an issuer, who is engaged in the business of effecting transactions in securities as a broker, dealer, or broker-dealer, as those terms are defined in the securities act of Washington, chapter 21.20 RCW, or the federal securities act of 1933. "Security business" does not include any company excluded from the definition of broker or dealer under the federal investment company act of 1940 or any entity that is not an investment company by reason of sections 3(c)(1) and 3(c)(3) through 3(c)(14) thereof.

RCW 82.04.4281. The legislature did not define "investment." But it clarified its intent for the statute, explicitly abrogating *Simpson* and declaring an intent to provide a more "positive environment for capital investment in this state":

> The legislature finds that the application of the business and occupation tax deductions provided in RCW 82.04.4281 for investment income of persons deemed to be "other financial businesses" has been the subject of uncertainty, and therefore, disagreement and litigation between taxpayers and the state. The legislature further finds that the decision of the state supreme court in *Simpson* . . . could lead to a restrictive, narrow interpretation of the deductibility of investment income for business and occupation tax purposes. As a result, the legislature directed the department of revenue to work with affected businesses to develop a revision of the statute that would provide certainty and stability for taxpayers and the state. The legislature intends, by adopting this recommended revision of the statute, to provide a positive environment for capital investment in this state, while continuing to treat similarly situated taxpayers fairly.

LAWS OF 2002, ch. 150, § 1.

B.  Defining "investment" in context with the 2002 amendments

When interpreting a statute's plain language, we read all words "'in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary.'" *Associated Gen. Contractors*, 2 Wn.3d at 855 (quoting *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008)); *see also Green v. Pierce County*, 197 Wn.2d 841, 853, 487 P.3d 499 (2021). We consider the meaning of words that naturally attach to them from the context and "'adopt

15

the sense of the words which best harmonizes with the context.'" *Id.* at 855-56

(internal quotation marks omitted) (quoting *State v. Roggenkamp*, 153 Wn.2d 614,

623, 106 P.3d 196 (2005)). Where the legislature has not defined a term, we "'will

give the term its plain and ordinary meaning ascertained from a standard

dictionary.'" *Cornu-Labat v. Hosp. Dist. No. 2*, 177 Wn.2d 221, 231, 298 P.3d 741

(2013) (quoting *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)).

We must therefore define the word "investment" as used in the investment

tax deduction statute using those rules. As mentioned, the current statute states, "In

computing tax there may be deducted from the measure of tax . . . [a]mounts

derived from investments . . . ." RCW 82.04.4281(1)(a). The statute does not

define the term "investment."

The majority does not start with those words or that statutory context.

Instead, it relies exclusively on *O'Leary*'s purported definition of "investment,"

which is the "incidental investment of surplus funds." Majority at 8.

The first problem with the majority's analysis is that it does not start from

the plain language of the statute in context, as discussed above.

The next problem with the majority's analysis is that it uses the word

"investment" to define "investment," thus producing a meaningless circular

definition. *See State v. Weatherwax*, 188 Wn.2d 139, 148, 392 P.3d 1054 (2017)

("'we presume the legislature did not intend absurd results' and thus avoid them where possible" (quoting *State v. Eaton*, 168 Wn.2d 476, 480, 229 P.3d 704 (2010))).

The third problem with the majority's analysis is that *O'Leary* did not actually *define* "investment." This requires some background to explain, and I get to that in Part III, below.

The fourth problem with the majority's analysis is that it ignores the 2002 legislature's clear intent to broaden the investment income deduction and to narrow the entities barred from claiming that deduction. The 2002 amendments barred three types of entities from taking the investment income deduction:

- A "Banking business," which includes "a national or state-chartered bank, a mutual savings bank, a savings and loan association, a trust company, an alien bank, a foreign bank, a credit union, a stock savings bank, or a similar entity that is chartered under Title *30, 31, 32, or 33 RCW, or organized under Title 12 U.S.C.";
- A "Lending business," which includes "a person engaged in the business of making secured or unsecured loans of money, or extending credit, and (i) more than one-half of the person's gross income is earned from such activities and (ii) more than one-half of the person's total expenditures are incurred in support of such activities," excluding loans and extensions of credit that involve "ownership of or trading in publicly traded debt instruments, or substantially equivalent instruments offered in a private placement";
- And a "Security business," which includes "a person, other than an issuer, who is engaged in the business of effecting

17

> transactions in securities as a broker, dealer, or broker-dealer, as those terms are defined in the securities act of Washington, chapter 21.20 RCW, or the federal securities act of 1933. 'Security business' does not include any company excluded from the definition of broker or dealer under the federal investment company act of 1940 or any entity that is not an investment company by reason of sections 3(c)(1) and 3(c)(3) through 3(c)(14) thereof."

RCW 82.04.4281(3)(a)-(d).

The previous version of the statute excluded far more businesses. It did bar the businesses on the list above. But it also barred "other financial businesses" in an interjectory list (with far less detail) inserted directly into the deduction language itself: "there may be deducted from the measure of tax amounts derived by persons, *other than those engaging in banking, loan, security, or other financial businesses*, from investments or the use of money as such . . . ." Former RCW 82.04.4281.

But the 2002 legislature struck "financial businesses" from the current list of excluded entities completely. The exclusion of a vague, catch-all term like "financial business" from the current, detailed list of excluded entities shows the legislature intended to exclude *only* the listed entities from taking the deduction and no others. *See State v. LG Elecs., Inc.*, 186 Wn.2d 1, 9, 375 P.3d 636 (2016) ("Under . . . expressio unius est exclusio alterius, "'[w]here a statute specifically designates the things upon which it operates, there is an inference that the

Legislature intended all omissions.""" (second alteration in original) (quoting *In re*

*Pers. Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999) (quoting

*Queets Band of Indians v. State*, 102 Wn.2d 1, 5, 682 P.2d 909 (1984)))); *Wash.*

*Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 98, 459

P.2d 633 (1969).

The surest sign of the legislature's intent to create a broadly accessible

deduction with a finite list of excluded entities comes from the legislature's own

explicit findings:

> [T]he legislature directed the department of revenue to work with affected
> businesses to develop a revision of the statute that would provide certainty
> and stability for taxpayers and the state. The legislature intends, by adopting
> this recommended revision of the statute, to provide a positive environment
> for capital investment in this state, while continuing to treat similarly
> situated taxpayers fairly.

LAWS OF 2002, ch. 150, § 1.

The majority says that under *O'Leary*, "businesses may *not* deduct income

generated by their primary business activities under RCW 82.04.4281." Majority at

12. Because investing is the LLCs' primary business, the majority denies the LLCs

the investment income deduction. But the problems identified above show what's

wrong with that approach.

Our precedent demands that we take a different approach. Because the

statute does not define the term "investments," we use a dictionary to define the

19

term. *Cornu-Labat*, 177 Wn.2d at 231. *Black's Law Dictionary* gives "investment" the following relevant, detailed definitions: "1. An expenditure to acquire property or assets to produce revenue; a capital outlay," or "2. The asset acquired or the sum invested." BLACK'S LAW DICTIONARY 988 (12th ed. 2024). It then goes on to list types of investments including "fixed-dollar investment[s]," "fixed-income investment[s]," "inward investment[s]," and "net investment[s]." *Id.* These listings are all examples of expenditures of capital that will either preserve the value of the capital in a stable form or (hopefully) lead to a future return on the initial expenditure through dividends or appreciation.

*Webster's Dictionary* gives more straightforward definitions. An "investment" is "an expenditure of money for income or profit or to purchase something of intrinsic value **:** capital outlay," "the sum invested or the property purchased," or "the commitment of funds with a view to minimizing risk and safeguarding capital while earning a return . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1190 (2002).

These dictionary definitions show that "investments" are expenditures of capital by a business to either safeguard it or (hopefully) earn a return on it. While this encompasses a broad category of activity from which a business might earn income, the legislature included no qualifiers on the deduction in this portion of the

20

statute. The statute simply exempts from B&O taxation "[a]mounts derived from investments." RCW 82.04.4281(1)(a).

When viewed in the context of the other 2002 amendments, interpreting "investment" to allow businesses to deduct income from capital expenditures that safeguard money or make money from interest or dividends makes the most sense.

C. Applying the statutory test for the investment income deduction

To access RCW 82.04.4281's deduction, the question—under the plain language of the statute—is whether the entity claiming the deduction earned investment income and, if so, whether it is one of the entities barred by the statute from deducting that income. RCW 82.04.4281(1)(a), (3)(a)-(d).

Here, all the LLCs at issue are investment companies that buy and sell distressed debt instruments. All of their income comes from owning or trading in these investments, making it all investment income. As the majority acknowledges, investment companies like these LLCs are not among the entities barred from taking the deduction. Majority at 11 ("investment companies are not 'security businesses' under RCW 82.04.4281"). So under the plain language of the statute, the LLCs can deduct "[a]mounts derived from investments." RCW 82.04.4281(1)(a). The fact that investment income is *all* their income is immaterial under the statutory language and context.

I would therefore hold that the statute allows these LLCs to claim the investment income deduction, reverse the Court of Appeals, and remand the case for further proceedings.

III.     *O'Leary*'s incidental investment test cannot survive the legislature's elimination of the "financial business" exclusion

The majority relies mainly on *O'Leary*'s "incidental investment test" to reach its contrary conclusion. But the statute does not contain the words "incidental investment" or any other comparable words. And *O'Leary*'s creation of that "incidental investment test" did not just precede the major, 2002 statutory revision—its "incidental investment test" was also inextricably tied to the now eliminated "financial businesses" exclusion. That means that the legislative rewrite of the "financial businesses" exclusion changed not just the "financial business" exclusion but also the "incidental investment test" limitation.

The majority reasons that we defined the term "investments" in *O'Leary*, and that *O'Leary*'s definition remains binding on this court. Majority at 4-5.

But we did not define the term "investments"  in *O'Leary*. We listed types of business investments (investments "incidental" to the main purpose of business) that could qualify for the deduction. *O'Leary*, 105 Wn.2d at 682. And to create that test for qualifying "investment income," we relied heavily on *John H. Sellen Construction Co. v. Department of Revenue* where we defined the term "financial

22

business"—the term that the legislature has since stricken from the statute. 87 Wn.2d 878, 883, 558 P.2d 1342 (1976).

Let's look at the history of that stricken term. In *Sellen*, several businesses claimed the investment income tax deduction because they received income from various investments such as interest bearing savings accounts, stocks, and bonds. 87 Wn.2d at 879. These businesses included a construction company, a brewery, two health care companies, and a charity. *Id.* at 879-880. We held that former RCW 82.04.4281 allowed these businesses to take the deduction unless they constituted "financial businesses," so the question for the court was whether these businesses were "financial businesses" under the statute. *Id.* at 882.

The Department argued that all the businesses were "financial businesses" and thus barred from taking the deduction. *Id.* We noted that the Department equated "investing any income"—including "*incidental investments of surplus funds*"—"with being a financial business," thus "render[ing] the statute a nullity." *Id.* at 883 (emphasis added). Relying on the canon that "we should not nullify any portion of the statute," we rejected the Department's argument. *Id.* (citing *Pub. Hosp. Dist. No. 2 v. Taxpayers of Pub. Hosp. Dist. No. 2*, 44 Wn.2d 623, 269 P.2d 594 (1954); *Grp. Health Coop. v. King County Med. Soc'y*, 39 Wn.2d 586, 237 P.2d 737 (1951)).

Instead, we noted that the legislature had barred banking, loan, and security companies from deducting their investment income. *Id.* And so—under the ejusdem generis principle that "'general terms suggest items or things similar to those designated by the precise or specific terms'"—a "financial business" must resemble those other financial entities to be disqualified. *Id.* at 883-84 (quoting *State v. Thompson*, 38 Wn.2d 774, 777, 232 P.2d 87 (1951)). We held that the businesses at issue were not "financial businesses" because they were not like banking, lending, or security businesses. *Id.* at 884. Thus, they could claim the deduction. *Id.*

The majority claims that *O'Leary*, decided 10 years after *Sellen* and heavily dependent on *Sellen*, defined the term investment. Majority at 12. But a close examination of *O'Leary* shows that it did no such thing. In *O'Leary*, an investment partnership sold several apartment complexes using contracts that required the purchaser to make "periodic payments of principal and interest." *O'Leary*, 105 Wn.2d at 680. The partnership claimed that the contracts were "investments" and that the payments constituted deduction investment income under RCW 82.04.4281. *Id.* at 681. We said that for the partnership "to qualify for the deduction, they must show both (1) the real estate contracts from which they

received interest constituted investments, and (2) [the partnership] is not engaged in a financial business." *Id.* at 681-82.

To decide whether the real estate contracts were "investments," we changed *Sellen*'s "incidental investment" language into a test for whether a business could deduct income gained from a particular investment under RCW 82.04.4281. *Id.* at 682 ("In *Sellen* we allowed a deduction for income from a business's 'incidental investments of surplus funds'" (quoting *Sellen*, 87 Wn.2d at 883)). We held that "[w]hether an investment is 'incidental' to the main purpose of a business is an appropriate means of distinguishing those investments whose income should be exempted from the B&O tax of RCW 82.04.4281." *Id.* Because the real estate contracts were not "incidental" to the landlord's business, the contracts were not investments on which the business could deduct any income earned. *Id.*

So contrary to the majority's assertion, *O'Leary* did not define what an investment is. Instead, *O'Leary* described some types of income-creating investments that a business could deduct from its B&O tax liability—investments "incidental" to a business's main purpose.

But *O'Leary*'s incidental investment distinction is inextricably bound to *Sellen*'s (now defunct) definition of a financial business. In *Sellen*, the Department argued that essentially any investment by a business turned that business into a

"financial business" that was barred from claiming the deduction. 87 Wn.2d at 882.

We disagreed because, under that interpretation, "few taxpayers, if any, *making*

*incidental investments of surplus funds* could receive the deduction," which would

render the statute null. *Id.* at 883 (emphasis added). To avoid that result, we held

that for a business to be considered a "financial business," it must materially

resemble one of the other barred entities on the statutory list—a bank, lender, or

security company.

Essentially, *we approved the deduction for businesses that made only*

*"incidental investments" in* Sellen *because those businesses could not possibly*

*constitute financial businesses*. *O'Leary*'s incidental investment *test*—not

definition—is merely another way of describing what does not constitute a

"financial business" under the former statute.[5]

---

[5] We also held in *O'Leary* that the real estate contracts at issue were not investments. 105 Wn.2d at 682-83. But that had nothing to do with whether the contracts were "incidental" to the partnership's main line of business. We said the real estate contracts weren't investments because they weren't loans, and "vendor[s] of a real estate contract may be treated differently than other holders of debt investments":

> "Making a loan and taking a land contract as security is not the same . . . as selling a piece of land and accepting the payment in installments. In one activity, money is advanced. In the other, no money is advanced by the seller; rather he relinquishes the right to immediate payment."

*Id.* at 682 (quoting *Clifford v. State*, 78 Wn.2d 4, 8, 469 P.2d 549 (1970)). On that basis we concluded that the real estate contracts were not investments and so did not need to determine if the partnership was a financial business. *Id.* at 683.

As stated, the legislature eliminated the term "financial business" from the statute completely after *Simpson*. Laws OF 2002, ch. 150, § 1 ("The legislature . . . finds that the decision of the state supreme court in *Simpson* . . . could lead to a restrictive, narrow interpretation of the deductibility of investment income for business and occupation tax purposes."). Thus, the majority errs in reading *O'Leary*'s "incidental investment test" as surviving the legislature's 2002 elimination of the term "financial businesses." The incidental investment test is too closely tethered to the meaning of "financial business" to survive that term's elimination.

CONCLUSION

Stare decisis is vital to our common law system, especially for common law cases. But it does not apply when the statute that the prior decision interpreted has been substantially revised. That's the situation we have here.

We must therefore determine the meaning of the current statute from the language of the current statute, not from a decision of this court interpreting a prior version of the statute. The current statute creates a broadly accessible deduction for all investment income and a narrow, finite list of entities barred from claiming the deduction. The current statute eliminates the exception from eligibility for the deduction for other "financial businesses," thus undermining the entire basis for

*O'Leary*'s incidental investment exception. And the current statute comes with an explicit statement of legislative intent to expand the availability of the investment income deduction to create a welcoming investment landscape.

It necessarily follows that the LLCs are entitled to claim the statutory investment income deduction. I would therefore reverse the Court of Appeals.

I respectfully dissent.

_____
Gordon McCloud, J.

_____
Madsen, J.